CREAMERY DAIRY CO. v. ELECTRIC PARK CO.

(Court of Civil Appeals of Texas. San Antonio. June 14, 1911. Rehearing Denied July 1, 1911.)

INJUNCTION (§ 136*)—TEMPORARY INJUNCTION —GROUND.

Where the lessee of an ice cream privilege at a park is in arrears in the payment of its weekly rental through neglect on its part, and on being notified of the cancellation of the lease immediately tendered the amount in arrears, with interest, it is entitled to a temporary injunction against forfeiture of the lease.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

Appeal from District Court, Bexar County; J. L. Camp, Judge.

Action by the Creamery Dairy Company against the Electric Park Company. From an order denying a temporary injunction, the petitioner appeals. Reversed, and temporary injunction granted.

Terrell & Terrell, for appellant. W. H. Lipscomb, for appellee.

JAMES, C. J. This is an appeal from an order denying a temporary injunction. The petitioner, the Creamery Dairy Company, had a lease from the appellee, executed in 1906, to run 10 years, of the ice cream privilege at the Electric Park in San Antonio, at a rental of $5 per week, payable each week, during the times the park was open to the public for park purposes. The lease contained the provision: "In the event the party of the second part shall fail to pay to the party of the first part any sum or sums of money when due and payable as herein provided, or in the event the said party of the second part shall fail to comply with any other covenant or condition on his part to be kept and performed, then and in that event the party of the first part is hereby authorized to cancel and annul this agreement." Plaintiff's statement of the case shows as follows: "The Electric Park Company did not run its privileges during the winter months, and after it opened in the spring of 1911 petitioner neglected for four weeks to pay the rental, owing to the press of business. He was notified of his delinquency, and wrote a check in payment of same; but before he could deliver it he was notified of the cancellation of his lease. He then tendered the money in gold, together with interest to that date, and also tendered the money in court, which tender was refused."

The facts, supported by the evidence, which the court is presumed to have acted upon, are that after appellant was in default in the payment of rent it was notified of the default and given the opportunity to pay it, but neglected thereafter to do so for a considerable time. The testimony of Rumbaugh, president of the Electric Park Company, was in substance that about May 7th or 8th he called up the Dairy Company and asked for Mr. Kline, who was not in. Then he asked to talk to the man who wrote checks; that such a person came to the phone, and was told that this rent would have to be paid, and he said it would be attended to, but nothing was done. The same witness testified that at about that time he had a conversation with Mr. Irwin, the man who had charge of the stand for the Creamery Dairy Company at the park, and told him that if

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

they wanted to hold on that they would have to pay up the rent, and that afterwards, on the same day, Irwin told him that he had seen the head man from the Creamery Dairy Company and he said the matter would be attended to at once; that the next week he saw Irwin again, and told him that if this rent was not paid up they were going to cancel the agreement, and he said he would see Mr. Kline and have it arranged. This was on the 14th. Nobody came around or offered to pay, and on the 17th a meeting of the board of directors was had, and a resolution was passed annulling the contract for nonpayment of rent, and Kline was notified. The witness Mayers, secretary of the Park Company, testified in substance that he met Mr. Kline in a drug store and asked him who was to pay the rent, and Kline said he would pay it. After that, about two weeks, he called up Mr. Kline, who was not in, and he asked for the man to come to the phone who was in authority when Kline was away, and he told this man that the president asked him to call up and ask for the rental, and the person answered that they would attend to it right away. This witness stated that he said to Kline in the drug store, "Who is to pay for the ice cream privilege at Electric Park?" and. Kline said, "I am, and I will send you a check," and the witness said, "All right." It appears that Kline came on the day after the cancellation, and after he received notice of the cancellation, and tendered the rent, and it was refused. Both Rumbaugh and Mayers testified that Kline admitted that he had violated the contract—overlooked and neglected it. Kline testified to the effect that after the conversation with Mayers he wrote out a check, put it in his pocket to take to them, and meant to take it up to them personally, but failed to do so. He stated: "The next day (which was after the cancellation) Mr. Terrell and I went up and tendered the rent. The first day I offered to pay the whole year's rent in advance, and acknowledged my carelessness in not attending to and paying it as the contract calls for; in fact, I had not thought about what the contract did call for. It was nothing but a piece of neglect on my part." The above is as strong as the testimony is in favor of the judgment.

The authorities are practically unanimous to the effect that equity relieves against the forfeiture of a leasehold estate for the violation of a covenant to pay money, and will do so in all cases where the lessor will not be damaged by granting the relief. As stated in Underhill on Landlord and Tenant, § 412: "Equity will grant relief against a forfeiture for the nonpayment of rent on the date it was due, for compensation can readily be made to the lessor, and he placed in statu quo. The payment of interest by the lessee to the lessor of the rent from the date it was

payable will be a sufficient compensation to the lessor for his damages, and he will thereby be placed in the same position as if he had received his rent promptly." See, also, 2 Tiffany on Landlord & Tenant, p. 1412. We have no statute on the subject, and the rule applies which obtains in equity. The only decision in this state that bears on the subject is Randolph v. Mitchell, 51 S. W. 298, where the rule is clearly recognized, and from which it would appear that the relief is granted unless the breach of the covenant has been willful, or the neglect so culpable as to amount to the same thing. That there was neglect in the case before us is apparent, and in fact confessed. But, according to the evidence, the intention to pay without delay was evident, and provision was made for payment, and the failure to carry out the intention was the result of oversight or forgetfulness, something which every man is subject to, more or less. No injury can result to appellee by allowing the payment to be made, with interest, and the lessee to be reinstated, unless it be, as some of the evidence indicates, that the lessor may at this time make a more advantageous lease of the privilege, which is a matter that does not appeal to a court of equity. Such matter would rather be considered in favor of the lessee, where a forfeiture of a valuable right is involved.

The judgment is reversed, and the temporary injunction granted, the writ to be issued by the clerk of the district court upon appellant giving a bond in the terms of the law, in an amount to be fixed by the district judge and approved by the clerk, and, further, upon appellant paying into court the rent in arrears to such date, with interest thereon at the rate of 6 per cent. per annum. This order is not to interfere with the power of the district judge to dissolve the temporary injunction for nonpayment of future rent, or for other causes.