Maurice CARANAS, Appellant,

v.

Guy T. JONES and G. J.'s, Inc., Appellees.

No. 17236.

Court of Civil Appeals of Texas.

Dallas.

Jan. 31, 1969.

Rehearing Denied Feb. 28, 1969.

Wm. Andress, Jr., Andress, Woodgate & Hartt, Dallas, for appellant.

Robert S. Mizell, of Howell, Johnson, Mizell, Taylor, Price & Corrigan, Dallas, for appellees.

CLAUDE WILLIAMS, Justice.

Maurice Caranas sued Guy T. Jones, an individual, and G. J.'s, Inc., a corporation. The petition set forth two separate causes of action.

First, Caranas alleged that he was the owner of certain real property located on Field Circle between Hines Boulevard and State Highway 114 in the City of Dallas. He said that he entered into an agreement with Jones on April 9, 1962 wherein he agreed to construct a restaurant building on a portion of this property and upon completion thereof he would lease same, together with the improvements, to a corporation to be formed by Jones. He pled that on or about October 31, 1962 he, as lessor, and G. J.'s, Inc., a corporation, as lessee, entered into a written lease on a part of the premises consisting of 1.53 acres, and the improvements thereon, for a term of fifteen years beginning October 1, 1962 and ending September 30, 1977, for an agreed rental of $477,000, payable $2,650 monthly. The business was operated under the name of Guy's Coffee Shop. Caranas admitted that the rent was paid on the lease up to and including the month of August 1967 but said that since that time rent was not paid, the business closed, and the property surrendered to lessor to his damage in the amount of the "unpaid rental thereon, $320,650." Caranas stated that he has been able to rent the property for $1,650 a month and that he will apply this amount as credit upon the lease. He sought judgment against Jones individually and the corporation, jointly and severally, for the unpaid portion of the rentals due on the lease contract.

The second cause of action, as finally set forth in amended pleading, was based on a written lease agreement whereby Caranas rented to Jones individually certain restaurant property known as the Chez Maurice Cafe (subsequently known as The Bounty) and located on a different part of the same real estate involved in the first transaction described above. By the

terms of this lease Jones agreed to pay the sum of $33,900 payable $600 per month beginning September 1, 1963 and the lease further provided that lessee would pay any increase in ad valorem taxes on the demised premises in excess of those levied for 1963. Caranas says that during the years 1964 through 1967 the ad valorem taxes levied by the State, County, City and School District on the property leased exceeded the ad valorem taxes levied for 1963 in the aggregate sum of $3,613.51 and that demand for payment thereof was made upon Jones on December 11, 1967; that pursuant to the terms of the lease Jones had ten days to cure the defect and, failing same, default would occur and the lease could be forfeited. Caranas charged that Jones did not comply with the request within the ten-day period and he therefore elected to forfeit the lease but Jones has refused to deliver possession of the premises, to his damages in the sum of $10,000. He sought judgment decreeing forfeiture of the lease and recovery of the premises.

Responding to the first cause of action, hereinafter referred to as the "Coffee Shop" suit, Jones said that he was not a party to the lease agreement between Caranas and G. J.'s, Inc., and contended that there was no personal liability upon him as a result of the transaction between those parties.

Jones answered the amended petition in the second cause of action, hereinafter known as "The Bounty" suit, by admitting the terms of the lease agreement but contending that Caranas had never furnishsed him with any information to establish the accurateness of the amount of ad valorem taxes claimed to be due. He said that he was always ready, willing and able and is still ready, willing and able to pay Caranas any ad valorem taxes which he is legally obligated to pay but until furnished with sufficient information he is unable to comply with Caranas' demand. He also pled that it would be grossly inequitable and unconscionable to grant Caranas' request for forfeiture of the lease for the reasons named.

Following a nonjury trial the court held that in the "Coffee Shop" cause of action G. J.'s, Inc. was liable to Caranas for the rental for the balance of the lease term, less rental received by the landlord from other tenants, and that Caranas was entitled to foreclosure of his lien on the property of G. J.'s, Inc., together with reasonable attorney's fees. The court expressly held that there was no personal liability against the defendant Guy T. Jones individually and denied any recovery against him.

As to "The Bounty" cause of action the trial court found that the ad valorem taxes on the demised property, in excess of those levied for the year 1963, amounted at the time of trial to $3,613.51; that the landlord had made demand for such taxes on December 11, 1967; that the exact amount of such taxes was undetermined and unliquidated; that the payment was not made within ten days after said demand and no protest made by Jones until February 20, 1968. The court further found that Jones had made, prior to the time of trial, an admission in his pleadings that he was ready, willing and able to pay such taxes when the exact amount was determined. The court announced that if Jones would pay into the registry of the court within thirty days from the date of judgment the sum of $3,613.51, with interest, being the amount found by the court to be owing, the lease between Caranas and Jones would be relieved from forfeiture. The court then found that such amount had been paid into the registry of the court by Jones within the thirty-day period and it was therefore finally decreed that the lease would not be forfeited. The judgment recited that the amount so deposited in the registry of the court had been paid to and received by Caranas.

The trial court, at the request of Caranas, filed numerous findings of fact and conclusions of law. Relating to the "Cof-

fee Shop" cause of action, the court found, inter alia, that it was not the intention of Caranas and Jones that Jones would be personally liable for the lessee's obligations contained in the "Coffee Shop" lease of October 31, 1962, but that it was their intention that G. J.'s, Inc. would be solely liable for such obligation. As to "The Bounty" cause of action, the court found, inter alia, that Caranas did make demand upon Jones for the payment of the taxes which he claimed to be due on December 11, 1967; that Jones did not reply to such letter until February 20, 1968; that the taxes on "The Bounty" property were not separately rendered and assessed but constituted a portion of the taxes on a larger tract (including "The Bounty" property) owned by Caranas; that Caranas did not furnish Jones with the tax statements on the larger tract, or with the method of computation of taxes allegedly due on "The Bounty" tract prior to the trial; that the exact amount of the excess of the ad valorem taxes levied on the premises covered by "The Bounty" lease over those levied in 1963 could only be determined by approximation; that such amount was not liquidated when demand therefor was made on December 11, 1967; that the court determined at the time of trial that the amount was $3,613.51; that time was not of the essence in the payment of the amount of the excess taxes due under the terms of the lease on "The Bounty" property. The court concluded that it would be inequitable to forfeit "The Bounty" lease without affording Jones an opportunity to pay Caranas the amount of the excess taxes after same had been determined by the court.

Caranas has perfected this appeal. G. J.'s, Inc. does not appeal from the judgment against it.

## THE "COFFEE SHOP" APPEAL

Appellant seeks to reverse this part of the judgment based upon three points of error: (1) that the court erred in refusing certain additional findings of fact; (2) that there is no evidence to sustain the trial court's findings Nos. 5 and 6 wherein the court found that it was not the intention of the parties that Jones was to be individually liable for the lessee's obligations as reflected by the lease agreement; and (3) that the lease agreement between Caranas and G. J.'s, Inc. did not merge and supersede the prior agreements, including agreement by Jones previously made in connection with his guaranty of certain excess payments for improvements then under contruction, so as to relieve Jones of his personal liability on the lease. We will discuss these points in their inverse order.

On April 9, 1962 Jones signed a letter addressed to Caranas in which he agreed to execute, or cause to be executed, a lease agreement covering the property described therein, in the name of a corporation to be formed. In the letter, accepted and signed by Caranas, as lessor, Caranas agreed to spend up to the sum of $100,000 in the construction of a restaurant building on the leasehold premises. Jones agreed that in the event the construction cost of the building exceeded $100,000 he would pay such excess. The letter agreement contained the following statement:

"It is understood and agreed that the Lessee of the Lease Agreement shall be a new corporation formed for the purpose of managing the leased premises and that all improvements furnished by the Lessee in this agreement and all furniture, fixtures and trade equipment provided by the Lessee for the operation of the property shall be furnished without encumbrances and shall remain free and clear of encumbrances to any third party during the lease agreement. Lessor shall have as security for the rent due on this lease, a First Mortgage on the improvements furnished by the Lessee and the furniture, fixtures and trade equipment provided by Lessee for the operation of the business on said premises."

On June 8, 1962 Jones wrote another letter to Caranas and accepted by him in which the parties agreed to increase the one acre called for in the original form lease to 1.53 acres, and further agreed that the rental would be increased from $2,500 to $2,650 per month. It stated that all other conditions of the lease were to remain unchanged.

On or about October 31, 1962 the lease agreement in its final form was executed between Caranas, as lessor, and G. J.'s, Inc. as lessee. Jones executed the lease for G. J.'s, Inc. as President thereof. Jones did not sign the lease in any other capacity.

On November 30, 1962 Caranas and Jones, both individually and as President of G. J.'s, Inc., executed a "Memorandum of Agreement" which recited that on November 27, 1962 the parties had met and agreed that Caranas would spend up to the sum of $100,000 in the construction of a restaurant building at the location referred to in "that certain lease between Maurice Caranas, Lessor, and G. J.'s, Inc., Lessee, dated the 31st day of October, 1962 * * *", and that Jones agreed to furnish $75,000 cash as the remainder of the amount to complete the construction of the building. It was agreed between the parties that in the event construction costs exceeded $175,000 that Jones agreed to pay the excess immediately and if he failed to do so Caranas had the right to pay the excess and to complete the building and hold Jones "liable for any such excess costs." The agreement provided that the rental payments on the lease would not commence until May 1, 1963 instead of October 1, 1962.

Consideration of appellant's points dealing with the question of merger of pre-existing written agreements into the subsequent lease agreement, as well as complaints concerning the trial court's finding that it was the intention of the parties that Jones would not be personally liable on the lease agreement, requires a careful analysis of both antecedent and subsequent events to the lease itself. Moreover, we must do this in the light of the pleadings of appel-lant Caranas. It is quite evident from an analysis of the letter of April 9, 1962 that the intention of the parties concerning what they proposed to do in connection with the demised premises was clear and manifest. Caranas said that, as lessor, he would agree to spend up to $100,000 in building a restaurant on the leasehold premises. Jones said if the cost exceeded $100,000 he would pay such excess. Then the agreement continued that the restaurant would be leased by Caranas, as lessor, to a corporation, to be lessee, at a fixed rental. The agreement went on to spell out lessor's security for nonpayment of rent. Subsequent to the formation of the corporation and execution of the lease itself Jones, both as president of the corporation and individually, signed another memorandum agreement which related to two separate items. The first had to do with Jones' individual responsibility to pay the excess of $175,000 of cost of improvements. The second part of the agreement relates to the postponement of the beginning date of rental payments on the lease itself.

■ Appellant's suit is solely for the recovery of unpaid rental payments flowing from the lease agreement. Nowhere in Caranas' petition is there any reference to a cause of action against Jones for failing to perform his obligation to pay for any excess improvement costs. In none of the documents referred to is there any reference to the fact that Jones will be personally liable for the payment of the rent on the lease though it is expressly provided that he is personally liable to pay for the excess building costs. Since excess building costs are not involved in this litigation and since there is no evidence that Jones, individually, agreed to pay or be responsible for paying the rental payments designated in the lease itself, we think that the record clearly supports the trial court's finding that there were no written or oral agreements relating to the "Coffee Shop" lease which were not embodied and incorporated in the lease subsequently executed.

Merger, with respect to the law of contracts, refers to the extinguishment of one contract by its absorption into another contract, and is largely a matter of the intention of the parties. Gulf Oil Corp. v. Spence & Howe Construction Co., 356 S.W. 2d 382 (Tex.Civ.App., Houston 1962, affirmed Supreme Court 365 S.W.2d 631); Davis v. Andrews, 361 S.W.2d 419 (Tex. Civ.App., Dallas 1962, writ ref'd n. r. e.); Arkansas Oak Flooring Co. v. Mixon, 369 S.W.2d 804 (Tex.Civ.App., Texarkana 1963).

The intention of the parties concerning the lease to be executed by Caranas and the corporation is clearly manifested and brought forward into the lease agreement itself. The intention of the parties as to the other matter, not a part of the subject matter of this litigation, concerning Jones' individual promise to pay excess construction costs, is also quite evident but immaterial since no complaint is made or judgment sought for alleged violation thereof. The two matters are separate and distinct and the trial court was correct in not injecting the extraneous matters into his findings on the issues presented by the pleadings.

We have carefully considered appellant's "no evidence" point in the light of the applicable rules. When we do so, and disregard all evidence favorable to appellant, we find not only some evidence but ample evidence, to support the findings of the trial court that it was the intention of the parties that Jones would not be personally responsible for the rental payments.

As to appellant's requested additional findings of fact and conclusions of law the trial court did not err in refusing same for the reason that such requested findings are either already adequately covered by the court's findings and conclusions or they are contrary to such findings or were not material and necessary.

## "THE BOUNTY" APPEAL

At the outset of our consideration of this part of the appeal we are confronted with the contention asserted by appellee Jones, as contained in his first counterpoint, that appellant is precluded from attacking that portion of the judgment decreeing against forfeiture of the lease for the reason that, pursuant to decree of the court, appellee paid into the registry of the court, the amount of ad valorem taxes found by the court to be due, and appellant withdrew and retained such funds. Appellee asserts that appellant has become estopped to complain of this part of the judgment because he has received and retained the benefit thereof. He relies upon the opinion of our Supreme Court in Carle v. Carle, 149 Tex. 469, 234 S.W.2d 1002 (1950) and City of Mesquite v. Rawlins, 399 S.W.2d 162 (Tex.Civ.App., Tyler 1966, writ ref'd n. r. e.). The general rule relied upon by appellee in this connection is laid down in *Carle* as follows:

"A litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment, he cannot afterward prosecute an appeal therefrom. That is the general rule which appears to be universally recognized. It was announced by this court in the early case of Matlow v. Cox, 25 Tex. 578. The rule is based on the principle of estoppel. It, however, is subject to the exception that ' * * * where the reversal of a judgment cannot possibly affect an appellant's right to the benefit secured under a judgment, then an appeal may be taken, * * *.'" (Citing authorities.)

* * *

"The exception is narrow. Whether or not this case falls within it must be determined from answers to these questions: Could a reversal of the portions of the judgment referred to in these two certified questions possibly affect appellant's right to the benefits secured by him under the judgment? And would appellee be compelled to concede upon another trial that appellant has the right to retain those benefits regardless of the outcome of the litigation?"

■ We do not believe that the facts of the case before us bring it within the general rule announced in *Carle,* supra, but within the exception recited in such decision. We say this because appellant's cause of action as to "The Bounty" was not for the recovery of the ad valorem taxes due but was for forfeiture of the lease because of the failure to pay ad valorem taxes due. The ad valorem taxes were admittedly due by appellee but he says that he could not pay them because the amount had not been determined. The question of forfeiture within the ten-day period, as contended by appellant, is entirely separate from the question of actual payment of the taxes and may be decided upon another trial in the event of reversal. We overrule appellee's counterpoint.

In four points of error appellant attacks that part of the judgment dealing with "The Bounty" lease. Principally, appellant says that where the parties expressly provided in the lease that Jones' failure to comply with the terms thereof within ten days after notice of default should terminate it, and had ignored such demand to pay excess taxes owing under the lease, that the court erred in failing to terminate the lease and, in effect, rewriting it by extending the time for compliance beyond the terms contained in the lease itself. He then contends that there is no evidence to sustain the trial court's conclusion of law that it would be inequitable to forfeit "The Bounty" lease without affording Jones an opportunity to pay the excess taxes.

"The Bounty" lease from Caranas to Jones provides specifically that Jones will pay any increase in ad valorem taxes in excess of those levied on the demised premises for 1963. It also provides:

"That in case of default in any of the covenants herein, Lessor may enforce the performance of this lease in any modes provided by law, and this lease may be forfeited at Lessor's discretion if such default continue for a period of ten days after Lessor notifies said Lessee of such default and his intention to declare the lease forfeited * * * and thereupon (unless the Lessee shall have completely removed or cured said default) this lease shall cease and come to an end as if that were the day originally fixed herein for the expiration of the term hereof, * * *."

Caranas testified that when he first received the tax statements from the various taxing authorities showing increased taxes in excess of those levied for 1963, he orally told Jones about the amount of increase in taxes but that Jones replied he was having a hard time and asked him to wait a while, which he did. The first time appellant made any written request or demand for the payment of ad valorem taxes was in December 1967. In that letter Caranas advised Jones that he was in default of the payment of increased ad valorem taxes in excess of those levied for 1963 and that it was lessor's intention to use such default as a basis for forfeiture of the lease.

Jones admitted that he made no reply to this letter within ten days.

It is important to note that the original lawsuit in this case was filed September 9, 1967 which was three months before the mailing by Caranas of the written notice to Jones in which he asserted the right of forfeiture. Appellee makes the unchallenged statement in his brief, and both counsel verify in oral argument before the court, that in the original petition appellant did not seek forfeiture of "The Bounty" lease on the grounds of nonpayment of ad valorem taxes, but upon other grounds subsequently abandoned. It was in Caranas' first amended original petition, filed January 25, 1968, that he first alleged as a basis of forfeiture the nonpayment of taxes.

As stated Jones answered the first amended original petition by contending that the letter demand of December 11, 1967 was not sufficient to afford a predicate for forfeiture for the simple reason that the amount of taxes was unliquidated and not definite.

The record contains testimony to the effect that the various taxing authorities submitted their bill for taxes due to Caranas based upon the entire 5.31 acres owned by him and that the lease covering "The Bounty" premises covered only a small portion of that acreage. There was no separate assessment of taxes against the specific property covered by "The Bounty" lease. The evidence is uncontroverted that appellant's demand was based on calculation or an approximation of the amount of excess ad valorem taxes which he determined to be due on "The Bounty" lease property.

The trial court concluded that the demand for ad valorem taxes was based upon an approximation and therefore was unliquidated. He did calculate the taxes due himself and found the same to be the same amount as demanded by appellant.

Under the record as thus presented we are of the opinion, and so hold, that the trial court did not err in holding that it would be inequitable to forfeit "The Bounty" lease without affording the appellee an opportunity to pay the amount of the ad valorem taxes determined by the court to be due.

■■ Courts of equity do not favor forfeiture and in the absence of willful and culpable neglect on the part of the lessee a forfeiture will not be decreed for failure to comply with the covenants of the lease, especially where adequate compensation can be made for the breach. 36 Tex.Jur. 2d, § 256, p. 107. Equity relieves against the forfeiture of a leasehold estate for the violation of a covenant to pay money, where the lessor will not be damaged by granting the relief. 36 Tex.Jur.2d, § 257, p. 108; Creamery Dairy Co. v. Electric Park Co., 138 S.W. 1106 (Tex.Civ.App., San Antonio 1911); Annotation, "Relief against forfeiture of lease for nonpayment of rent", 31 A.L.R.2d 321, and cases therein cited.

Our Supreme Court in Sirtex Oil Industries, Inc. v. Erigan, 403 S.W.2d 784 (1966), in an opinion by Mr. Justice Norvell, discussed the question of forfeitures of leases by virtue of breach of a condition or covenant. The court said that a lease will be most strongly construed against the lessor and that because of their harshness in operation, conditions are not favorites of the law. The court said that in case of a doubt as to the true construction of a clause in a lease it should be held to be a covenant, and not a condition or limitation, as the law does not favor forfeiture. The court denied forfeiture for nonpayment of rent under the factual situation presented which demonstrated clearly that forfeiture would result in such hardship to the tenant as to make it unconscionable to decree forfeiture.

■ The facts developed in this record reveal a situation where the remedy of forfeiture would be manifestly unjust. At the time the written demand for ad valorem taxes was made in December 1967 appellant had based his suit for forfeiture on other grounds. The unpaid ad valorem taxes had been allowed to accumulate from year to year. The letter of demand, threatening forfeiture, made request for amounts of ad valorem taxes which are clearly unliquidated and indefinite. Appellee had a right to know the true amount of taxes due. When appellant amended his petition and sought forfeiture on the new ground of failure to pay the ad valorem taxes appellee responded by stating that he was ready, willing and able to pay the correct amount, as determined by the court. The court did ascertain the amount due whereupon appellee, within the time allowed by the court, paid the same, with interest, and it was accepted and received by appellant. Appellant has therefore not sustained any monetary damage by virtue of the alleged breach of the covenant. We think that under the authorities above cited the trial court was correct in his method of handling the matter.

We find ample evidence in this record to sustain the trial court's conclusion of law

that it would be inequitable to forfeit "The Bounty" lease.

Appellant's complaint concerning the refusal of the court to make additional findings of fact is overruled. The additional findings requested are nothing more than supplementary of the facts found by the court, or contrary to those findings already found, and hence need not have been made.

We have given careful consideration to all of appellant's points of error and finding the same to be without merit, and not revealing reversible error, the same are overruled.

The judgment of the trial court awarding relief to appellant against G. J.'s, Inc. is affirmed. The judgment of the trial court in all other respects is affirmed.

Affirmed.