## ASKEY v. STROUD.    (No. 9767.)

(Court of Civil Appeals of Texas. Fort Worth.
March 4, 1922.)

1. **Chattel mortgages ☜22, 147—To secure future debts is valid and good as to purchasers with notice.**

A valid mortgage may be given to secure future debts, and such a mortgage will be good, not only as between the parties, but as to purchasers from the mortgagor with notice of the mortgage.

2. **Subrogation ☜28—Payment of entire debt necessary to acquire creditor's security.**

For one who pays a debt to become subrogated to the rights of a creditor's security, he must pay the entire debt for which the security was given, as subrogation is a creature of equity and will never be allowed to the prejudice of the creditor.

3. **Chattel mortgages ☜288—Subrogation ☜ 28—Person paying note held not subrogated to rights in payee's security consisting of chattel mortgage, but entitled to require payee to exhaust additional security.**

Father of maker of note who purchased the same was not subrogated to the rights of the payee in the security furnished by a chattel mortgage securing the note and future indebtedness, where, at the time of the purchase of the note, the maker had incurred further indebtedness to the payee; but, where the payee had additional security, he should be required to exhaust such additional security first before satisfying his claim out of the property covered by the mortgage, on the father's intervention in the foreclosure proceedings.

Appeal from Wise County Court; W. D. Paschal, Judge.

Action by W. H. Askey against W. D. Stroud, in which W. H. Stroud intervened. From a judgment granting only part of the relief prayed for, plaintiff appeals. Reformed and affirmed.

R. E. Carswell, of Decatur, and H. E. Lobdell, for appellant.

L. D. Ratliff, of Haskell, for appellee.

BUCK, J. On March 6, 1920, W. D. Stroud executed a promissory note to W. H. Askey, due October 1st, after date, for $55, bearing 10 per cent. interest per annum, and secured by a chattel mortgage. The chattel mortgage secured a lien on two gray horses and a P. & O. planter, and certain other property, and further provided that the mortgage lien therein retained covered "the payment of all other indebtedness now due and owing said Askey, and any and all indebtedness hereafter to become due and owing said Askey," etc. On May 28, 1920, defendant, W. D. Stroud, executed a second note to W. H. Askey, payee, for $275, payable October 1st, after date, etc. This note was secured by a chattel mortgage on a Ford five-passenger car, and 17 acres of oats to be raised and upon other property. These two mortgages are in the same general form. On November 9, 1920, W. H. Askey filed suit in the county court upon these two notes, and upon an open account aggregating $37. He asked for judgment for the amount stipulated in the two notes, together with interest and attorney fees and for the amount of the open account, and for a foreclosure of his chattel mortgage liens, etc.

After suit was filed, W. H. Stroud, father of W. D. Stroud, paid the note for $55, together with interest and costs. He subsequently intervened, claiming that he had bought the said note, together with the mortgage lien securing same, and asked judgment for his debt, and a foreclosure of the mortgage lien, and that his lien be made prior and superior to the lien claimed by plaintiff. Plaintiff answered, denying that he had sold the W. D. Stroud note to W. H. Stroud, but claimed that, acting for W. D. Stroud, W. H. Stroud had paid the note for W. D. Stroud. The cause, as between plaintiff and intervener, was submitted to a jury upon two special issues, to wit:

(1) "Is or is not the intervener, W. H. Stroud, the present legal owner and holder of the $55 note described in plaintiff's petition?" Answer: "Yes."

(2) "If you have answered the first question in the affirmative, then say whether or not he is entitled to collect the same, together with the mortgage given to secure the same, if any?" Answer: "Yes."

The jury also found for the plaintiff on the $275 note, interest, and attorney's fees, and for the $37 open account. Upon this verdict the court rendered judgment for intervener for the $55 note, interest, and attorney's fees, and for a foreclosure upon the two horses and the P. & O. planter under the first-mentioned chattel mortgage; such lien being made prior and superior to the lien claimed by plaintiff. The judgment further gave plaintiff judgment for his debt, evidenced by the $275 note and the $37 open account, with a foreclosure of his mortgage lien upon the said car and the 17 acres of oats, and a foreclosure upon the two horses and cotton planter; the latter being subordinate and inferior to the mortgage lien held by W. H. Stroud. From this judgment plaintiff has appealed.

Plaintiff testified as follows:

"I am the plaintiff in this case. The two notes read in evidence, together with the chattel mortgages so read, were executed and delivered to me. And not being paid, I turned them over to Mr. Carswell, my attorney, for collection, together with the account, a copy of which is attached to my original petition filed in this cause. Nothing has been paid on the indebted-

☜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ness except the sum of $65.50 paid to me by Mr. Carswell, after this suit was filed. He paid it to me as the proceeds of the $55 note, principal, interest, and attorney's fee and paid to him by intervener, W. H. Stroud. The account attached to my petition and marked 'Exhibit A,' showing a balance due on same of $37, is just, true, due, and unpaid. The defendant bought from me the articles therein specified and on the dates therein shown and for the prices therein specified, and no payments have ever been made on same except those specified therein."

Plaintiff, recalled, testified that some time after this suit was filed intervener, W. H. Stroud, came to him and said he wanted to settle off the $55 note sued on for his son, the defendant. "I told him the note was in the hands of my attorney, Mr. Carswell, for collection, and that he would have to see Mr. Carswell. That is all that passed between us on the subject."

R. E. Carswell, attorney for plaintiff, testified that:

"Some time prior to the institution of this suit, plaintiff turned over to him for collection the two notes and the account described in plaintiff's petition and directed that suit be brought if they were not paid, and, the defendant failing to pay them, that he instituted this suit.

"Some time after the suit was filed and citation served, intervener, W. H. Stroud, came into my office and informed me that the defendant was his son, and that he desired to settle the $55 note, sued on, for his son. I calculated the amount due on the note, including 10 per cent. attorney's fee, and he gave me a check for same, payable to plaintiff, and I handed him the note. I did not mark it 'paid' on the face. Nothing was said about his purchasing the note. I had no authority to sell him the note; the extent of my authority was to receive payment of it, and I supposed he was satisfying the note for his son, the defendant."

### W. D. Stroud, defendant, testified:

"I am the defendant in this case. I made arrangements with my father, W. H. Stroud, to pay off and settle the $55 note, after plaintiff had brought this suit, and I owe him the amount he paid on same, and he is holding the same against me. I bought the P. & O. planter mentioned in plaintiff's petition, and gave the $55 note for same and a mortgage on the planter and two gray horses to secure the same. At the time I gave the mortgage, I did not know that there was a provision in same that it should secure any further debt I might owe Askey. I did not read the mortgage. I could read at the time I signed the mortgage. I afterward bought from plaintiff the automobile described in his petition, and gave the $275 note for the same, and gave the second mortgage read in evidence to secure it. I also bought the articles mentioned in the account attached to plaintiff's petition, and owe the balance due thereon. I understood that W. H. Stroud would take up the note and hold it against me, and he is doing it, and I will have to pay him the note."

### W. H. Stroud, intervener, testified:

"I suppose I am the legal owner of the $55 note sued on herein by plaintiff. I agreed with defendant, who is my son, to settle it for him. I paid it off and took it up and am holding it, and I expect him to pay it off to me. My attorney, Mr. Ford, told me to do this and to get the note and mortgage, and they would be my property, and I did so. I am asking for judgment in this case, foreclosing my mortgage against him."

### Cross-examined:

"Some time after plaintiff filed this suit, I went to see plaintiff and told him I wanted to settle the $55 note for my son. He told me that the note was in Mr. Carswell's hands for collection, and that I would have to see him and settle with him. I went to Mr. Carswell's office and told him I wanted to settle this $55 note for my son. He got the note and figured up the amount due on same, including principal, interest, and attorney's fees, and I gave him a check for the amount, and he handed me the note. This is all that occurred in reference to the matter."

[1] The first mortgage was filed for registration March 6, 1920, and the second on May 29, 1920. It is well established that a valid mortgage may be given to secure future debts, and that such a mortgage will be good, not only as between the parties, but as to purchasers from the mortgagor with notice of the mortgage. Freiberg, Kline & Co. v. Magale, 70 Tex. 116, 7 S. W. 684; Law Sprinkle Merc. Co. v. Hause et al. (Tex. Civ. App.) 184 S. W. 737, 738; Farmers' State Bank v. Bell (Tex. Civ. App.) 176 S. W. 922. Therefore the chattel mortgage first given constituted a first lien upon the two horses and the cotton planter to secure the debt evidenced by the second note and the open account, and plaintiff would have the right to that first lien, unless the first lien fixed by the first mortgage was transferred by the plaintiff to W. H. Stroud in the transaction between them.

We think the evidence hereinbefore quoted fails to show that there was any intention on the part of W. H. Askey or his attorney to transfer to W. H. Stroud, at the time he paid the amount of the note, interest, and attorney's fee, the mortgage lien. In fact, the evidence of plaintiff and his attorney tends to show that they did not so intend. Therefore the only ground upon which such transfer can be sustained is that equity regards that as done which ought to have been done. In 25 R. C. L. p. 1320, § 8, it is said:

"Independent of statutory regulations, the rules differ in different jurisdictions in respect of the need of an actual assignment of the debt by the creditor as a condition precedent to the exercise against the principal debtor of the rights acquired by subrogation. According to the great weight of authority, however, it is not essential to a complete legal subrogation that the one to whose rights another is sub-

rogated shall make a formal assignment of securities or other rights to which the surety becomes entitled, even where subrogation is claimed to the original obligation itself. As soon as the right of subrogation arises, equity makes the assignment, and hence the right of the person entitled by no means depends on, or is affected by, the willingness or unwillingness of the creditor to transfer the security. This rule is based on the broad principle that equity regards as done that which ought to have been done."

But on page 1324, vol. 25, R. C. L., it is said that—

"While subrogation is founded on principles of equity and benevolence, and may be decreed where no contract exists, yet it will not be decreed in favor of a mere volunteer, who, without any duty, moral or otherwise, pays the debt of another; for such a person can establish no equity, and can obtain the right of substitution by contract only."

Perhaps in no jurisdiction have the courts gone further in applying the doctrine of subrogation than in the courts of this state. McDonough v. Cross, 40 Tex. 251, 285; Burns v. Ledbetter, 54 Tex. 374; Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030. But see Moores v. Wills et ux., 69 Tex. 109, 114, 5 S. W. 675, apparently contra, as to a payment by a volunteer.

[2, 3] But in order for one who pays a debt to become subrogated to the rights of the creditor's security, he must pay the entire debt for which the security was given. 25 R. C. L. p. 1318, § 6; Knaffl v. Knoxville Banking & Trust Co., 133 Tenn. 655, 182 S. W. 232, Ann. Cas. 1917C, 1181, and authorities there cited. The reason is that subrogation is a creature of equity and will never be allowed to the prejudice of the creditor. 37 Cyc. 408. Hence, irrespective of whether the evidence in the instant case supports the intervener's claim that he purchased the note, it is apparent that the plaintiff did not verbally or in writing transfer the lien retained in the chattel mortgage. Therefore, since all of the creditor's debt was not paid, he still held the chattel mortgage lien to secure the payment of the $37 claim and the note for $275. The court below should have so instructed the jury and rendered judgment for plaintiff for his debt, with a foreclosure upon all of the mortgaged property. While, since plaintiff had additional security outside of the two horses and the cotton planter, he should, by another rule of equity, be required to exhaust such additional security first, and, if any balance be left unpaid, he would then be permitted to satisfy such balance out of the property mentioned in the first mortgage. Therefore the judgment below will be so reformed, and, as reformed, will be affirmed. The costs of this appeal will be adjudged against the appellee.

Reformed and affirmed.