**TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Appellant,**

v.

**LIBERTY BANK, Appellee.**

No. 1382.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Aug. 4, 1976.

Rehearing Denied Sept. 8, 1976.

John C. Nabors, J. Michael Dorman, Liddell, Sapp, Zivley & Brown, Houston, for appellant.

Eugene J. Pitman, Charles E. Fitch, DeLange, Hudspeth, Pitman & Katz, Sam W. Mintz, Houston, for appellee.

J. CURTISS BROWN, Chief Justice.

Liberty Bank (Liberty Bank or appellee) filed suit against Texas Commerce Bank National Association (Texas Commerce Bank or appellant) and others not material here in trespass to try title, for possession of certain real property, and to remove a cloud on the title to such property. The trial court granted summary judgment for Liberty Bank. Texas Commerce Bank has appealed.

In 1973, Michael J. Kalil purchased certain real property from Cyril J. Smith. Kalil took the property subject to two existing liens in favor of creditors of Smith. The first of such liens was security for a promissory note in the amount of $35,000. The second lien was security for a note in the amount of $81,000. After purchasing the property, Kalil executed a deed of trust to Lloyd L. Bolton, Trustee for Texas Commerce Bank, as a portion of the security for promissory notes in excess of $140,000 executed by Kalil to appellant. This deed of trust represented a third lien on the property in question.

In June of 1974 Kalil conveyed the property to Day-Landon Interests (Day-Landon). Day-Landon financed the purchase with a loan from Liberty Bank in the

amount of $187,500. As security for the loan, Day-Landon executed a deed of trust to the property to J. D. Westmoreland, Trustee for Liberty Bank. This deed of trust provided that

"in the event the proceeds of the indebtedness secured hereby as set forth herein are used to pay off and satisfy any liens heretofore existing on said property, then Beneficiary is, and shall be, subrogated to all of the rights, liens, and remedies of the holders of the indebtedness so paid."

When the Liberty Bank loan transaction was closed, the proceeds of the loan were used to pay off the balance on the $35,000 first-lien note and on the $81,000 second-lien note. However, through clerical error Texas Commerce Bank advised the title company that the amount due on the third lien was $1,319.80. As a result, $64,571.03 of the proceeds of the loan were forwarded to and kept by Kalil, and Texas Commerce was tendered only $1,319.80. Appellant alleges that the erroneous determination of the pay-off figure for its lien was due to the negligence of Liberty Bank and its agent. Liberty Bank asserts that Texas Commerce Bank's negligence caused the error. The holders of the two senior liens executed releases of their liens. Texas Commerce Bank refused to execute such a release.

■ Shortly after the loan transaction between Liberty Bank and Day-Landon, Texas Commerce Bank started foreclosure proceedings on its deed of trust lien on the property in question. It is not disputed that Kalil was in default on his indebtedness to Texas Commerce Bank. Liberty Bank's application for a temporary injunction to prevent Texas Commerce Bank from foreclosing was denied. Texas Commerce Bank proceeded with foreclosure and purchased the property at the Trustee's sale on October 1, 1974. Subsequently, Day-Landon defaulted on its loan to Liberty Bank, and Liberty Bank proceeded to foreclose on its own deed of trust lien. At its Trustee's sale, Liberty Bank purchased the property in question for an amount *less* than the total of the original first and second liens.

All of the above facts stand undisputed in the record except for the controversy concerning fault in determining the pay-off amount for the third lien.

■ In a summary judgment proceeding, it was Liberty Bank's burden to show that there was no genuine issue as to any material fact and that it was entitled to a judgment as a matter of law. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.Sup. 1970); Tex.R.Civ.P. 166-A. Liberty Bank's position is that as a matter of law it was subrogated to the rights of the holders of the senior liens, and that it therefore purchased the property at its Trustee's sale free of all encumbrances. Texas Commerce Bank's position is that Liberty Bank's negligence in failing to ascertain the correct pay-off amount of Kalil's indebtedness to appellant precludes the subrogation of Liberty Bank to the rights of the holders of the senior liens.

In our opinion this appeal is controlled by *Providence Institution for Savings v. Sims,* 441 S.W.2d 516 (Tex.Sup.1969). In that case the proceeds of a loan secured by a deed of trust on real estate were used, pursuant to an express subrogation agreement, to retire part of the indebtedness secured by a first lien on the property. There was an intervening mechanic's lien. The remainder of the indebtedness secured by the first lien was later subordinated to the deed of trust, which was subsequently foreclosed. The question was whether the purchaser at the foreclosure sale took the property free of or subject to the mechanic's lien. The court stated:

"By subordinating the lien securing the remainder of its indebtedness to the Hughes Investment [lender's] deed of trust, it [Republic Bank, original holder of the first lien] agreed that the latter would become a first lien on property. Respondent [holder of the intervening mechanic's lien] and Nortex [debtor] *were not prejudiced in any way by this transaction, and neither could object to the subrogation of Hughes Investment to the lien of the bank*." *Id.* at 519 (emphasis added).

See also *Whiteselle v. Texas Loan Agency*, 27 S.W. 309 (Tex.Civ.App.1894, writ ref'd); *Wilkins v. Gibson*, 113 Ga. 31, 38 S.E. 374 (1901).

Appellant's basic position is that summary judgment should not have been granted because of the fact issues raised relating to negligence and the alleged harm and prejudice to it. Texas Commerce finds prejudice in its contention that $64,571.03 should have been paid to it rather than the debtor. Appellant's position is untenable. Following the Day-Landon transaction, appellant stood in exactly the same position as before the transaction. Its third lien was subject to the first lien in the amount of approximately $35,000.00 and the second lien in the amount of approximately $81,000.00. Its lien was inferior to these prior and superior liens, but remained in force after the Day-Landon transaction. Upon foreclosure of the two prior and superior liens, the third lien of appellant would have been effective to secure it for any amount bid at the foreclosure sale in excess of the superior liens. No such excess bid was made. The Day-Landon transaction was one in which the Liberty Bank was a *lender*. It did not involve foreclosure of the prior liens. Instead, Liberty Bank was expressly subrogated to the prior and superior liens.

Liberty was under no duty to discharge Kalil's existing indebtedness before lending money to him. Appellant was not placed in a less favorable position by the express subrogation nor by the discharge of the indebtedness secured by the first and second liens. At all material times appellant could have paid the amounts secured by the prior and superior liens and thus become the senior lienholder. This it elected not to do.

The Supreme Court in *Sims* held that neither actual nor constructive knowledge of an intervening lien would defeat the right of subrogation where a senior lien had been discharged pursuant to an express agreement by the debtor that the lender would be entitled to subrogation. Whatever importance the issue of the lender's negligence may yet have, it has been relegated by *Sims* to cases in which the right of subrogation is wholly dependent on equitable principles.

 Since in the present case the deed of trust from Kalil to appellee contained an express subrogation clause, similar to the one in *Sims,* appellee's right is not wholly dependent on equitable principles. This conclusion is not altered by the fact that appellee obtained releases of the first and second liens rather than taking formal assignments of them. *Glasscock v. Travelers Ins. Co.,* 113 S.W.2d 1005 (Tex.Civ.App.-Austin 1938, writ ref'd). Any alleged negligence on the part of appellee is therefore immaterial. The judgment of the trial court is affirmed.

Affirmed.