MED CENTER BANK, Appellant,

v.

M.D. FLEETWOOD, Appellee.

No. 3-91-584-CV.

Court of Appeals of Texas, Austin.

May 19, 1993.

Rehearing Overruled June 30, 1993.

---

4. The record reflects the evidence as to who controlled the apartment is in dispute.

Shannon H. Ratliff, McGinnis, Lochridge & Kilgore, L.L.P., Austin, for appellant.

Robert M. Roller, Graves, Dougherty, Hearon & Moody, Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE * and JONES, JJ.

CARROLL, Chief Justice.

This is a subrogation case before this Court on its second appeal. M.D. Fleetwood sued Med Center Bank ("Med Center") seeking a declaratory judgment that Fleetwood's leasehold in certain real property was superior to Med Center's interest, obtained by purchase at foreclosure sale, in that same property. Med Center counterclaimed seeking a judgment declaring that its interest was superior. Med Center successfully moved for a summary judgment. However, on the first appeal of this cause, we reversed the summary judgment and remanded the cause for trial. *See Fleetwood v. Med Ctr. Bank*, 786 S.W.2d 550 (Tex.App.—Austin 1990, writ denied) (*Fleetwood I*). At trial, Fleetwood prevailed and, in addition to the declaration that his leasehold was superior to Med Center's interest, was awarded trespass damages and attorney's fees. Med Center now brings this appeal on eight points of error. We will reverse the judgment of the trial court and render judgment in favor of Med Center.

## BACKGROUND

In March 1984, Fleetwood and two other individuals, Messrs. Bradshaw and Looney, formed a partnership, the Center Hill Joint Venture ("Center Hill"), to develop approximately 24 acres of raw land for commercial use. Fleetwood held a 55 percent ownership interest in Center Hill, and Bradshaw and Looney each held a 22.5 percent interest. The principle project on the land was a shopping center. While the shopping center project occupied only a portion ("the shopping center tract") of the 24–acre tract, the tract could not be further subdivided because of zoning restrictions. The project was initially financed by interim construction financing, secured by a deed of trust on the entire 24–acre tract.

After the shopping center was completed, but before permanent financing had replaced the interim construction financing, Fleetwood sold his interest in Center Hill to the joint venture. This transaction closed on February 3, 1986. As consideration for his interest, Fleetwood was to receive $479,000 in cash and a promissory note for $1,391,000 ("the Fleetwood note"). The Fleetwood note was secured by a deed of trust ("the Fleetwood deed of trust") on the entire 24–acre tract, a standby letter of credit in the amount of $695,000, and the personal guarantees of the two remaining partners. The Fleetwood deed of trust provided that Fleetwood would subordinate his lien to any lien securing the permanent financing on the shopping center tract. The parties also executed a lease agreement whereby Fleetwood was granted a 55 percent undivided interest in a 99–year lease ("the lease")[1] of the two portions of the tract not occupied by the shopping center ("the leased tracts").[2] The lease ex-

---

* Justice Marilyn Aboussie sitting pursuant to Tex. R.App.P. 79(b).

1. Looney and Bradshaw each individually held an undivided 22.5 percent interest of the lease; the divisions reflected the parties' previous ownership percentages in the joint venture.

2. The parties desired to divide the undeveloped portions of the 24–acre tract among themselves

free and clear of the financing. However, they were prevented from subdividing the 24–acre tract by zoning restrictions. Instead they took proportionate shares of a 99–year ground lease of the undeveloped portions with an option to purchase these tracts at a nominal price when

pressly provided that it was "subject to" the Fleetwood deed of trust. A "Memorandum of Lease Agreement" and the Fleetwood deed of trust were filed in the Travis County Real Property Records, in respective order.

Subsequently, Nationwide Life Insurance Company ("Nationwide") provided the permanent financing for the shopping center project. This loan was secured by a deed of trust on the shopping center tract and one of the two leased tracts, designated "tract A." [3] Only tract A is at issue in this cause. As provided in the Fleetwood deed of trust, Fleetwood expressly subordinated his lien to Nationwide's deed of trust.

The closing on the permanent financing triggered a prepayment obligation of Center Hill on the Fleetwood note. The joint venture could not make the payment. Fleetwood threatened to call the standby letter of credit and otherwise exercise his rights under the note and deed of trust if the default were not cured. To cure the default, Center Hill obtained a $1,691,000 loan from Med Center, evidenced by a promissory note. This debt was secured by a deed of trust on the shopping center tract and tract A. On May 19, 1986, Center Hill used most of the loan proceeds to pay off the Fleetwood note. At Med Center's request, Fleetwood executed a full release of his deed of trust.

Almost immediately thereafter, Center Hill fell victim to the local real estate bust, failed to meet its financial obligations, and was forced to declare bankruptcy. In December 1986 or January 1987, after Center Hill defaulted on the Med Center note, Med Center called in the letter of credit to bring the note current. In January 1988, Med Center foreclosed on tract A by nonjudicial foreclosure sale. Sometime after the sale, at Med Center's request, Bradshaw and Looney executed Acknowledgments of Extinguishment of Lease.

As stated above, Fleetwood initiated this suit seeking a declaration that his leasehold interest was superior to Med Center's interest obtained at the foreclosure sale and to recover trespass damages for Med Center's alleged wrongful possession of tract A. Med Center counterclaimed seeking a contrary result. After we reversed the summary judgment in favor of Med Center in *Fleetwood I*, the case proceeded to trial. The case was tried to the court, although, a jury was impanelled to provide advisory findings. The trial court declared that Fleetwood's interest was superior and that Fleetwood held 100 percent of the leasehold. The trial court also awarded Fleetwood trespass damages in the amount of the fair rental value of tract A and attorney's fees. Med Center appeals.

## DISCUSSION AND HOLDING

As stated above, only tract A, subject to both Med Center's deed-of-trust lien and the lease, is at issue in this appeal. Med Center brings eight points of error. Points one through three complain of the determination that Med Center should not be subrogated to Fleetwood's lien because subrogation would prejudice Fleetwood's interest in the lease. Point four complains of the trial court's refusal to submit instructions and questions on Med Center's fraudulent conveyance counterclaim to the jury. Points five and six complain of the determination that Fleetwood held 100 percent of the leasehold after the other joint lessors acknowledged the lease was extinguished. Points seven and eight respectively complain of the award of trespass damages and attorney's fees to Fleetwood. Before we address these points of error, we discuss three preliminary matters.

### Motion to Dismiss

Fleetwood has moved for a dismissal of this appeal contending that it is barred by estoppel. Under the provisions of the lease, Fleetwood, as tenant, was obligated to pay the property taxes on tract A. He failed to do so during the pendency of the

---

zoning laws changed to allow subdivision. The intent of the parties was to make the transaction as close as possible to an outright division of these tracts.

3. This is the designation given the tract by the parties in their trial presentation and in argument before this Court. The other leased tract was designated "tract B."

subrogation suit. After the trial court rendered its judgment that the lease was valid, Med Center demanded from Fleetwood reimbursement for the property taxes on tract A that Med Center had paid. When Fleetwood failed to make payment, Med Center gave notice that it had terminated the lease because of Fleetwood's material breach and filed a separate suit seeking a judgment declaring the lease terminated.

■ Fleetwood argues the Med Center has taken inconsistent positions in the two causes and has accepted benefits of the judgment in this cause by demanding payment of the taxes and terminating the lease under its terms. Fleetwood contends that these actions estop Med Center's right to appeal the judgment in this cause. Fleetwood relies on the decision in *Carle v. Carle*, 149 Tex. 469, 234 S.W.2d 1002 (1950).[4] *See also Empire Gas & Fuel Co. v. Albright*, 126 Tex. 485, 87 S.W.2d 1092 (1935); *River & Beach Land Corp. v. O'Donnell*, 632 S.W.2d 885 (Tex.App.—Corpus Christi 1982, no writ). In *Carle* the court held that "[a] litigant cannot treat a judgment as both right and wrong, and if he has voluntarily accepted the benefits of a judgment he cannot afterward prosecute an appeal therefrom." *Carle*, 234 S.W.2d at 1004. There are two exceptions to this rule. First, if a reversal of the judgment on appeal would not affect the party's right to the benefit received, estoppel does not apply. *Id.* Second, if the party's retention of benefits under the judgment was not

voluntary, estoppel does not bar an appeal the judgment. *Id.*

■ In its second suit, Med Center seeks only a declaration that it properly terminated the lease pursuant to its provisions. If successful in its second suit, Med Center would hold tract A free and clear of the lease. Similarly, if we reverse the judgment in this cause and declare that Med Center's lien was superior to the lease and the foreclosure extinguished the lease, Med Center would hold tract A free and clear of the lease. Med Center seeks to reach the same result by alternative theories.[5] We note that Med Center could have sought these alternative remedies in a single cause. Tex.R.Civ.P. 47. Although our decision in this cause may moot the subsequent suit, Med Center's alternative grounds for relief are not fatally inconsistent. Whether by a foreclosure of a superior lien or by termination for a default, Med Center seeks the same result, avoidance of Fleetwood's lease interest. Accordingly, we conclude that Med Center's positions in these two causes are not inconsistent. A reversal of the judgment in this cause would result in the same benefit to Med Center as it seeks in its second suit. Therefore, this situation lies within the first exception set out in *Carle*. We overrule Fleetwood's motion to dismiss.

### Priority

Second, the parties dispute the relative priority of the lease, the Fleetwood deed-of-

4. Generally, *Carle* and other cases applying the rule have involved situations where the appellant brings an appeal after he has received satisfaction on the judgment, attempted to enforce the judgment, or accepted a transfer of property pursuant to the judgment. *See, e.g., id.* at 1003; *Smith v. Texas Commerce Bank*, 822 S.W.2d 812, 813 (Tex.App.—Corpus Christi 1992, writ denied); *River & Beach Land Corp. v. O'Donnell*, 632 S.W.2d 885, 889 (Tex.App.—Corpus Christi 1982, no writ); *Latimer v. State*, 328 S.W.2d 242 (Tex.Civ.App.—Beaumont 1959, writ ref'd n.r.e.); *Gaulding v. Gaulding*, 256 S.W.2d 684 (Tex.Civ.App.—Dallas 1953, no writ). In this cause, the "benefit" of the judgment Med Center allegedly accepted is the declaration that the lease was valid and superior to Med Center's interest. In the subsequent suit, Med Center is seeking a declaration that the lease was validly terminated. We are not aware of any case

applying *Carle* to bar an appeal of a declaratory judgment because of a separate suit seeking a declaration necessarily based on an alternative factual position. The issue of the relative priority of the lease and Med Center's lien is distinct from the issue whether Med Center had the right to terminate the lease for Fleetwood's breach. *See Caranas v. Jones*, 437 S.W.2d 905, 910–11 (Tex.Civ.App.—Dallas 1969, writ ref'd n.r.e.) (appellant-landlord's receipt of ad valorem taxes recovered in judgment did not bar appeal of portion of judgment declaring lease not forfeited for failure to pay the taxes).

5. Whether a declaration of termination of the lease should have been sought in this cause as alternative relief and whether the claim for such a declaration is barred by res judicata or waiver are not issues we may consider in this cause.

trust lien, and the Nationwide deed-of-trust lien. In our decision in the previous appeal, we determined that, under the record summary-judgment proof, the lease was expressly subordinated to the Fleetwood deed of trust. *See Fleetwood I,* 786 S.W.2d at 552. While Fleetwood now asserts the opposite in the preliminary portions of his brief, he does not argue that his lease could not be wiped out at foreclosure because it was superior to his lien, to which Med Center attempts to be subrogated, nor does it appear he urged such argument at trial. Fleetwood also alleges that only his deed of trust and not the lease was expressly subordinated to the Nationwide deed of trust. This issue was not examined in the previous appeal. Fleetwood asserts that, absent an express subordination agreement for the lease, the lease retained its first-in-time priority over Nationwide's lien. However, the lease was expressly subordinated to the Fleetwood deed of trust which, in turn, was expressly subordinated to the Nationwide deed of trust. We conclude that this results in the following order of priority as to tract A, as of the closing of the permanent financing: (1) Nationwide deed-of-trust lien, (2) Fleetwood deed-of-trust lien, and (3) leasehold interest.

## Law of the Case

 Third, we must examine the extent to which our prior opinion controls the disposition of this appeal under the doctrine of "the law of the case." [6] The law of the case doctrine is a principle by which the initial determinations of questions of law in a case are held to govern throughout the subsequent stages of the case. *Hudson v. Wakefield,* 711 S.W.2d 628, 630 (Tex.1986); *Trevino v. Turcotte,* 564 S.W.2d 682, 685 (Tex.1978); *Transport Ins. Co. v. Employers Casualty Co.,* 470 S.W.2d 757, 762

(Tex.Civ.App.—Dallas 1971, writ ref'd n.r.e.). The doctrine operates to narrow the issues in successive stages of litigation and is supported by policy goals of uniformity of decisions and judicial economy. *Hudson,* 711 S.W.2d at 630. The doctrine applies only to questions of law and not to questions of fact. *Id.* The doctrine does not necessarily apply if the issues and facts are not substantially the same in the subsequent trial. *Id.; Transport Ins. Co.,* 470 S.W.2d at 762. This situation is especially likely if the parties amend their pleadings after the cause is remanded. *Hudson,* 711 S.W.2d at 630.

The application of the law of the case to determinations made in prior appeals from summary judgments has also been questioned. "Where there has been a reversal of a summary judgment in favor of a Defendant and then a trial on the merits with an appeal, the law as stated in the summary judgment [appeal] does not necessarily control the case on the appeal from the trial on the merits." *Allstate Ins. Co. v. Smith,* 471 S.W.2d 620, 623 (Tex.Civ. App.—El Paso, 1971 no writ); *see also Glenn v. Prestegord,* 456 S.W.2d 901, 902 (Tex.1970). An "appeal after a full and lengthy trial on the merits with a jury acting as the finder of facts, differs in a very material sense from the prior limited appeal" from a summary judgment. *Governing Bd. v. Pannill,* 659 S.W.2d 670, 681 (Tex.App.—Beaumont 1983, writ ref'd n.r.e.).

The court in *Pannill* recognized that the standard of review in an appeal from summary judgment is very different in that the reviewing court is required to review the evidence in the light most favorable to the non-movant. *Pannill,* 659 S.W.2d at 680. In a summary judgment, the movant also has the burden to show that he is entitled

---

**6.** Application of the law of the case "is flexible and must be left to the discretion of the court and determined according to the particular circumstances of the case." *Kay v. Sandler,* 704 S.W.2d 430, 433 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.); *see Trevino,* 564 S.W.2d at 685. The decision whether "a prior decision in the same case will be reopened is a matter within the discretion of the appellate court." *Roberts v. Armstrong,* 231 S.W. 371 (Tex.1921);

*Houston Endowment, Inc. v. City of Houston,* 468 S.W.2d 540, 543 (Tex.Civ.App.—Houston [14th Dist.] 1971, writ ref'd n.r.e.). An appellate court may consider all issues properly before it, and make such rulings as it deems proper under the record in the case, irrespective of a prior opinion. *Green v. Priddy,* 112 Tex. 567, 250 S.W. 656, 660 (Tex.1923); *Kempner v. Huddleston,* 90 Tex. 182, 37 S.W. 1066 (1896).

to judgment as a matter of law. This is a fundamentally different inquiry from that on review after a full trial when the reviewing court examines whether the party has adduced proof that he is entitled to judgment at trial. *Abalos v. Oil Dev. Co. of Tex.*, 526 S.W.2d 604, 607–08 (Tex.Civ. App.—Amarillo 1975), *aff'd*, 544 S.W.2d 627 (Tex.1976). Additionally, the case is not likely to be fully developed at the summary-judgment stage. *Pannill*, 659 S.W.2d at 680. In a motion for summary judgment, the movant is not required to assert every theory upon which he may recover or defend; thus, upon trial on remand, the movant may bring very different theories than those reviewed on a previous appeal from a summary judgment. *Hudson*, 711 S.W.2d at 630–31.

■ In this case, we issued our prior opinion on review of a summary judgment in favor of Med Center. In reviewing a summary judgment, we must give the non-movant every opportunity to present his case. In the prior appeal, we sought to give Fleetwood every opportunity to prove an exception to the doctrine of subrogation. We were also strongly influenced by the equitable nature of legal subrogation and the existence of fact questions as to the parties' intent. *Fleetwood I*, 786 S.W.2d at 556–57. The facts and issues of the case were substantially developed at trial following remand. Under these circumstances, we conclude that the law of the case should not control the legal issues presented in this appeal.[7]

### Subrogation

■ The primary issue in this case is whether Med Center is subrogated to the

Fleetwood deed-of-trust lien. It is undisputed that the lease was executed before Med Center's deed of trust. If a lease is executed before a deed of trust, the lease is superior to the deed-of-trust lien and not extinguished by foreclosure; the purchaser at the foreclosure sale becomes the new landlord. *United Gen. Ins. Agency v. American Nat'l Ins. Co.*, 740 S.W.2d 885, 886 (Tex.App.—El Paso 1987, no writ). Thus, if Med Center was not subrogated to the rights under the Fleetwood's lien, its deed of trust, which was perfected later in time, is inferior to Fleetwood's lease interest. However, if Med Center was entitled to be subrogated to the Fleetwood deed of trust, its lien was superior to the lease, due to the express subordination of the lease to the Fleetwood deed of trust, and its subsequent foreclosure extinguished the lease.

In *Fleetwood I*, we set out the general principles of subrogation as follows:

Subrogation is a doctrine of equity, and is the substitution of another person in the place of a creditor, so that the person in whose favor it is applied succeeds to the rights of the creditor in relation to the debt....

There are two kinds of subrogation: "legal," which arises by operation of law, and "conventional," which arises by agreement of the parties. Legal subrogation is always controlled by principles of equity.

Subrogation has been recognized as an important doctrine and has traditionally received favorable treatment in Texas. One of the three commonly recognized situations in which subrogation arises in mortgage law is when a lender or other third party advances money to pay off a

---

7. The doctrine has also been held not to apply when the Texas Supreme Court either refused the application for writ of error from the prior appeal for "want of jurisdiction" or for "no reversible error." *Trevino*, 564 S.W.2d at 685; *Fant v. Howell*, 547 S.W.2d 261, 264 (Tex.1977); *Burchfield v. Markham*, 294 S.W.2d 795, 798 (Tex.1956). We are aware of no case expressly ruling on the application of the law of the case to a writ denied decision. However, several courts have applied the doctrine to writ denied cases without discussion of the writ history issue. *See Berryman v. El Paso Natural Gas Co.*,

838 S.W.2d 610 (Tex.App.—Corpus Christi 1992, n.w.h.); *Texas Employers' Ins. Ass'n v. Borum*, 834 S.W.2d 395 (Tex.App.—San Antonio 1992); *Hurd Enters., Ltd. v. Bruni*, 828 S.W.2d 101 (Tex.App.—San Antonio 1992, writ denied); *Dieter v. Baker Serv. Tools*, 776 S.W.2d 781 (Tex. App.—Corpus Christi 1989, writ denied). The supreme court's writ denied ruling does not indicate approval of any portion of the court of appeals' opinion. Tex.R.App.P. 133(a); *Matthews Const. Co., Inc. v. Rosen*, 796 S.W.2d 692, 694 n. 2 (Tex.1990).

prior lien on property. Texas courts have long held that

> [o]ne who advances money to pay off an incumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property, is not a mere volunteer, and, in the event the new security is for any reason not a first lien on the property, the holder of such security ... will be subrogated to the rights of the prior incumbrance under the security held by him, unless the superior or equal equities of others will be prejudiced thereby....

However, courts have generally recognized the importance of the limitation contained in the last clause of the above quotation: "unless the superior or equal equities of others would be prejudiced thereby."

*Fleetwood I*, 786 S.W.2d at 553–554 (citations omitted).

Med Center's first three points of error complain that the trial court erred in rendering judgment for Fleetwood on the subrogation issue because: (1) Med Center was entitled to subrogation as a matter of law and no Texas authority exists to support an exception to subrogation on these facts; (2) the great weight and preponderance of the evidence and equities favored subrogating Med Center to Fleetwood's lien; and (3) there was no evidence or insufficient evidence to support applying the exception to subrogation in this case.

In *Fleetwood I*, we determined "that Fleetwood's ownership of that senior deed-of-trust lien provided some degree of protection for his leasehold interest" in that "[a]s long as he owned that senior lien, he had several options to exercise in the event of a default" and "[w]ith the deed-of-trust lien in the hands of a third party, however, that advantage would be lost." *Fleetwood*

*I*, 786 S.W.2d at 555. We held that this loss of protection was a "cognizable prejudice" to Fleetwood as a holder of an intervening interest, *i.e.*, the leasehold. *Id.* at 556. Based in part on this possibility of prejudice, we determined that Med Center was not entitled to summary judgment as a matter of law.[8] *Id.* We did not determine whether a sufficient prejudice to Fleetwood as a leaseholder did in fact exist so as to prevent subrogation, but remanded the cause for this determination.

Initially, we note that Fleetwood occupies two distinct positions as to tract A: (1) a creditor with a security interest in tract A and (2) a joint lessee of the tract. If two different individuals occupied these positions, subrogation would be available for a party paying off the debt to the creditor, and a foreclosure of any lien superior to the lease would extinguish any interest under the lease. *Dillon v. Kauffman & Runge*, 58 Tex. 696, 706 (1883); *United Gen. Ins. Agency v. American Nat'l Ins. Co.*, 740 S.W.2d at 886. When the debt was paid in full, Fleetwood's status as a lienholder was eliminated. Therefore, any prejudice to Fleetwood as a result of the subrogation could be only to his lease interest.

The determination of whether subrogation prejudices intervening interests is made as of the time of the transaction supporting subrogation, in this case, the payoff of the debt and the release of Fleetwood's lien. The consequences of subsequent transactions or events, such as the foreclosure in this case, are not relevant to this inquiry. Fleetwood asserts that his interest in the lease was prejudiced because the substitution of Med Center by subrogation would eliminate his discretion whether to forego foreclosure of the superior lien in the event of default. This does not appear to be the type of loss of a "legal right" or a "vested interest" courts of other jurisdictions have found to be prejudicial. *See Boley v. Daniel*, 72 Fla. 121, 72 So. 644

---

**8.** As additional grounds for reversal of the summary judgment we found that (1) fact issues existed as to the intent of the parties and (2) equitable issues are rarely appropriate for summary judgment. *Fleetwood I*, 786 S.W.2d at 556–57.

(1916); *Rice v. Winters*, 45 Neb. 517, 63 N.W. 830 (1895). In this case, subrogation would result in a change of the entity with the discretion to enforce the terms of the lien; no change in those terms or the amount of the debt superior to the lease would result. We believe that Fleetwood's discretion to exercise less than the full extent of his legal rights under his lien is not in itself a legal or vested right. Taken to the extreme, Fleetwood's argument could support a determination that the mere change of the entity holding the superior right results in a change of the potential enforcement of its terms. The subrogation of a lender with strict collection policies to the priority of a lender with policies favoring loan workouts would be prejudicial to intervening interest holders. Under such a holding, the exception to subrogation would swallow the rule.

The exception language has been often cited as part of the general principles of subrogation, but rarely applied. In *Fievel v. Zuber*, 67 Tex. 275, 3 S.W. 273, 275 (1887), the court stated that subrogation "cannot be done as to a part of the debt, or in any manner to affect the rights of the creditor to his prejudice." The court went on to state that "there are numerous decisions which recognize the doctrine that, if a third party pay[s] the entire debt in pursuant of an agreement between him and the debtor ... he shall be subrogated to the creditor's rights." *Id.* at 275. *Fievel* involved a full payment of the debt; the court found no prejudice to the creditor, and applied the general rule allowing subrogation. In the case from which we quoted the exception language, "unless the superior or equal equities of others would be prejudiced thereby," there was a full payment of the debt and the court allowed subrogation. *See Sanger Bros. v. Ely & Walker Dry Goods Co.*, 207 S.W. 348, 349 (Tex.Civ.App.—Fort Worth 1918, writ ref'd).

The Texas cases applying or discussing the exception to subrogation have all involved only a "partial payment" of the outstanding debt. *See Providence Inst. for Sav. v. Sims*, 441 S.W.2d 516, 519 (Tex.

1969); *Cason v. Westfall*, 18 S.W. 668, 670 (Tex.1892); *Texas & S. L. R.R. Co. v. McCaughey*, 62 Tex. 271, 273–74 (1884); *Foos Gas Engine Co. v. Fairview Land & Cattle Co.*, 185 S.W. 382, 386 (Tex.Civ. App.—Amarillo 1916, writ ref'd); *Slaughter v. Boyce*, 170 S.W. 259, 261 (Tex.Civ. App.—Amarillo 1914, writ ref'd); *Ricketts v. Alliance Life Ins. Co.*, 135 S.W.2d 725, 735 (Tex.Civ.App.—Amarillo 1939, writ dism'd judgm't cor.); *Fidelity & Deposit Co. of Md. v. Farmers & Merchants Nat'l Bank of Nacona*, 121 S.W.2d 503, 506 (Tex. Civ.App.—Fort Worth 1938, writ dism'd); *Sherman v. El Paso Nat'l Bank*, 100 S.W.2d 402, 409 (Tex.Civ.App.—El Paso 1936, writ dism'd); *Kone v. Harper*, 297 S.W. 294, 298 (Tex.Civ.App.—Waco 1927), *aff'd sub nom. Ward–Harrison Co. v. Kone*, 1 S.W.2d 857 (Tex.1928); *Askey v. Stroud*, 240 S.W. 339, 391 (Tex.Civ.App.— Fort Worth 1922, no writ). In a partial-payment situation, the prior creditor is prejudiced by a subsequent creditor assuming a position equal or superior to the lien securing the remaining debt to the prior creditor. *Providence Inst.*, 441 S.W.2d at 519; *see also Kone*, 297 S.W. at 298; *Askey*, 240 S.W. at 341. However, in a full-payment situation, the creditor is not prejudiced in this manner. *Ricketts*, 135 S.W.2d at 735. In the immediate case, it is undisputed that the Med Center loan proceeds paid the entirety of the debt to Fleetwood.

We believe that absent a showing that subrogation results in additional debt having priority over or parity with the intervening interest, a material change in the terms of the superior interest, or other pecuniary loss resulting from the subrogation, there is no prejudice to intervening interest holders.

Additionally, allowing Fleetwood to prevent a subrogation to his lien would violate the policy favoring debtor refinancing of debts and the policy against "clogging" the equitable right of redemption of debts. *See Peugh v. Davis*, 96 U.S. 332, 337, 24 L.Ed. 775 (1877); *Laird v. Weis*, 85 Tex. 93, 23 S.W. 864, 865 (1892). No matter how carefully the lease transaction was crafted to insure its priority, it would nonetheless

hinder Bradshaw and Looney from refinancing their debt to Fleetwood if the lender would not succeed to the same lien Fleetwood enjoyed before his debt was paid in full. In *Fears v. Albea*, 69 Tex. 437, 6 S.W. 286, 289 (1887), the court stated, "Every man ... has the right to dispose of his property ... and any rule that would prevent or clog the alienation of incumbered property ... would be very prejudicial to the debtor." The court went on to discuss equitable subrogation of a lender providing funds to pay off the incumbrance as the appropriate solution. *Id.* 6 S.W. at 289. There is a strong policy in favor of allowing debtors to refinance their debts; subrogation gives lenders an incentive to make these loans. *See Fievel*, 3 S.W. at 275–76.

Fleetwood's argument lacks credibility because he asserts that he was prejudiced by the removal of his discretion to forego the foreclosure of his lien after he had threatened to fully exercise his right of foreclosure. It seems unlikely that Fleetwood would, in fact, have exercised any less than his full rights under his lien to collect the debt if he had not been paid in full by the Med Center loan. By fully exercising his rights, he could have foreclosed on the entire 24–acre tract, extinguished Bradshaw's and Looney's interests in the leasehold, and then pursued any deficiency against the standby letter of credit and against Bradshaw and Looney individually. The only advantage to Fleetwood in foregoing foreclosure would be the continued existence of the lease. This advantage pales when compared with the prospect of obtaining the full tract subject only to the Nationwide lien.

Fleetwood asserts that it was his intention to "carefully craft" the transaction so as to prevent any lien other than his own from enjoying priority over the lease. The intention of the intervening interest holder should not enter into the subrogation determination. Certainly every interest holder would wish to maintain the highest priority. Fleetwood's contrary intention should not operate to deny his debtor the opportunity to refinance the debt. Such a result would be inequitable. *See Fears*, 6 S.W. at 289; *Fievel*, 3 S.W. at 275–76. Additional-

ly, the lease was always subject to extinguishment by foreclosure of the Nationwide lien, to which all of Fleetwood's interests were expressly subordinated. Thus, Fleetwood never had complete control over the fate of the lease.

 Where there is an express provision in the deed of trust between the debtor and the lender stating that the proceeds are to be used to pay off the prior debt and that the lender will be subrogated to all rights of the prior lien, the right of subrogation is not wholly dependent on equitable principles. *Providence Inst.*, 441 S.W.2d at 519–20; *Texas Commerce Bank Nat'l Ass'n. v. Liberty Bank*, 540 S.W.2d 554, 557 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). In the immediate case, Med Center's deed of trust contained such a provision.

 Fleetwood asserts that his execution of a full release of his lien rather than a transfer or assignment to Med Center indicates negligence on Med Center's part and prevents subrogation. The lender's right to subrogation is not affected if, upon the payment of the prior debt, the lender obtains a release of the prior lien rather than an assignment. *Providence Inst.*, 441 S.W.2d at 520; *Texas Commerce Bank*, 540 S.W.2d at 557; *Glasscock v. Travelers Ins. Co.*, 113 S.W.2d 1005 (Tex. Civ.App.—Austin 1938, writ ref'd). The lender's actual or constructive knowledge of the prior lien or negligence in attempting to achieve priority does not bar its right to subrogation. *Providence Inst.*, 441 S.W.2d at 519; *Texas Commerce Bank*, 540 S.W.2d at 557; *Sanger Bros.*, 207 S.W. at 349–350.

 In summary, we conclude that a lender extending funds to pay off a debt has a right to be subrogated to the lien securing that debt, except in cases where an intervening interest is prejudiced. We hold that the exception does not apply in the immediate situation, as it is undisputed that the funds Med Center extended completely satisfied the debt to Fleetwood. Fleetwood has shown no pecuniary loss to

his lease interest directly resulting from the subrogation.

Accordingly, we conclude that as a matter of law Med Center is subrogated to the rights under the Fleetwood deed of trust and that the foreclosure extinguished the lease. We sustain Med Center's first point of error and need not reach its second and third points of error.

### Fraudulent–Conveyance Submission

■ Med Center's fourth point of error complains that the trial court erred in refusing to submit jury questions and instructions on its claim that the lease constituted a fraudulent conveyance. Med Center has acknowledged that this cause was tried to the court with a jury empaneled only to render advisory findings. Under these circumstances, we conclude it is not error for the trial court not to request advisory findings on every issue before it. Having determined that Med Center was subrogated to Fleetwood's lien rights and that the foreclosure extinguished the lease, however, we need not resolve this point to dispose of this appeal.

### Leasehold Abandonment

In its fifth and sixth points of error, Med Center complains that the trial court erred in its determination that Fleetwood held 100 percent of the leasehold because (1) Bradshaw and Looney had acknowledged that their interest passed to Med Center, and (2) Fleetwood failed to request a jury finding on abandonment, and there was no evidence to support a finding of abandonment. Having determined that Med Center is subrogated to Fleetwood's lien rights and that the foreclosure extinguished the lease, we do not reach Med Center's fifth and sixth points of error.

### Trespass Damages

In its seventh point of error, Med Center complains that the trial court erred in awarding Fleetwood trespass damages because (1) Fleetwood's lease was extinguished by the foreclosure, and (2) Fleetwood only held a 55 percent interest in the leasehold and was entitled to only 55 per-

cent of the fair rental value. Having determined that Med Center is subrogated to the rights under Fleetwood's lien and that the foreclosure extinguished the lease, we sustain Med Center's seventh point of error.

### Attorney's Fees

In its eighth point of error, Med Center complains of the award of and the amount of attorney's fees. Having otherwise held in favor of Med Center, we sustain this point of error.

### CONCLUSION

We reverse the trial-court judgment and render judgment that Fleetwood take nothing by his claims for damages and attorney's fees; we declare that Med Center is subrogated to all rights under the Fleetwood lien and that the foreclosure of Med Center's lien extinguished Fleetwood's interest in tract A under the lease.

JONES, Justice, dissenting.

As an appellate court, it is not our task to weigh evidence or balance equities anew, but only to ensure that the jury and trial court exercised those functions within certain broad limits of reasonableness and discretion. Because I believe the majority has strayed from this principle, I respectfully dissent.

The present case is superficially complex, but internally straightforward. Center Hill Joint Venture ("the joint venture") owned a 25–acre tract of land, considered by the owners as three tracts, designated "A," "B," and "C." A shopping center was constructed on Tract "C," which comprised about half of the twenty-five acres and which was located in the middle of the property, effectively separating Tracts "A" and "B." M.D. Fleetwood, appellee, sold his interest in the joint venture to the other venturers, after which he owned no interest in Tract "C" other than a deed-of-trust lien on all twenty-five acres as security for $1,391,000 the joint venture owed him as part of the purchase price for his interest in the joint venture. As another part of the bargained-for consideration for the sale

of his interest in the joint venture, Fleetwood was granted a 55% interest in a long-term lease to Tracts "A" and "B," which Fleetwood and the joint venture hoped to develop later. Although filed of record before the deed of trust, the lease contained a provision subordinating the lease to Fleetwood's deed-of-trust lien. Fleetwood testified that he structured the transaction so that if it became necessary for him to foreclose on his superior lien, he could exercise his options in such a way as to "protect" his interest in the inferior lease.

Subsequently, the joint venture obtained a loan from Med Center Bank ("Med Center"), appellant, which was used to pay off the joint venture's debt to Fleetwood. Without Fleetwood's knowledge, the joint venture gave Med Center a deed-of-trust lien on Tract "A," a substantial portion of the leased property, as well as Tract "C," the shopping-center tract. Med Center was not aware at that time that the lease covering Tract "A" was junior to Fleetwood's deed-of-trust lien. Obviously, therefore, Med Center had no expectation that its newly acquired deed-of-trust lien would or could be senior to the lease on Tract "A." It is not surprising, then, that neither Med Center nor the remaining venturers informed Fleetwood that the Bank intended to be subrogated to Fleetwood's superior lien position as to Tract "A." Med Center had no such intention. Nor is it surprising that neither Med Center nor the joint venture asked Fleetwood for an assignment of his deed-of-trust lien. Instead, Fleetwood was asked for and gave a "full release" of that lien. Fleetwood believed his superior lien was being completely extinguished.

The joint venture subsequently defaulted on the Med Center loan, and Med Center foreclosed its lien. In so doing, Med Center did not foreclose on Tract "C," in which Fleetwood owned no interest; rather, it foreclosed on Tract "A." When Med Center learned that the lease included a provision subordinating it to Fleetwood's lien, it took the position that it should be subrogated to Fleetwood's previous superior lien position, thus resulting in an extinguishment of the inferior lease. Fleetwood filed this suit to prevent Med Center from accomplishing that purpose.

## HOLDING OF *FLEETWOOD I*

The trial court initially granted summary judgment in favor of Med Center. On appeal, we reversed the summary judgment and remanded the cause for trial on the merits. *See Fleetwood v. Med Center Bank*, 786 S.W.2d 550 (Tex.App.—Austin 1990, writ denied) (*"Fleetwood I"*). As we stated in *Fleetwood I*, the principle of subrogation in the present context is that

[o]ne who advances money to pay off an incumbrance on realty at the instance of either the owner of the property or the holder of the incumbrance, either on the express understanding, or under circumstances from which an understanding will be implied, that the advance made is to be secured by a first lien on the property ... will be subrogated to the rights of the prior incumbrancer under the security held by him, *unless the superior or equal equities of others would be prejudiced thereby ....*

*Id.* at 554 (quoting *Sanger Bros. v. Ely & Walker Dry Goods Co.*, 207 S.W. 348, 349 (Tex.Civ.App.—Fort Worth 1918, writ ref'd)) (emphasis added). Based on the proviso emphasized above, we then held that

a transfer of the rights under a senior lien away from one who also holds a junior lien is a cognizable prejudice to the junior lienholder, to be considered by a court as part of the totality of the circumstances in deciding whether to grant subrogation to a third party who advanced money to pay off the senior lien.

786 S.W.2d at 555–56.

We concluded that Fleetwood's interest in the lease, while simultaneously holding a more senior lien, effectively placed him in the same position as a junior lienholder who would suffer a "cognizable prejudice" by the substitution of someone else as the holder of the more senior lien. 786 S.W.2d at 556. Accordingly, we held that summary judgment for Med Center was not appropriate, and that the trial court should be allowed, after a trial on the merits, to

exercise its chancery powers of equity. The Texas Supreme Court denied Med Center's application for writ of error. Now, after allowing the trial court to conduct a jury trial while adhering rigorously to the principles we announced, the majority overrules the central holding of *Fleetwood I.*

## EQUITABLE PRINCIPLES GOVERN

Subrogation is a doctrine of equity. *Chicago Title Ins. Co. v. Lawrence Invs., Inc.,* 782 S.W.2d 332, 334 (Tex.App.—Fort Worth 1989, writ ref'd). Where a new lender desires to be subrogated to the lien of a prior creditor by lending money to the debtor to pay off the prior creditor, even the existence of a "subrogation agreement" between the debtor and the new lender does not change the doctrine's equitable nature:

> Even when there is an agreement to subrogate, the so-called right of subrogation is not one inherent in the contract, but arises in equity and can therefore be withheld or applied as in equity seems meet according to sound judicial discretion, which is another way of saying, according to the dictates of justice. The doctrine of subrogation has its roots in the soil of justice and equity, and not in contract. . . .

*Martin v. Hickenlooper,* 90 Utah 150, 59 P.2d 1139, 1143 (1936); *see also Rock River Lumber Corp. v. Universal Mortgage Corp.,* 82 Wis.2d 235, 262 N.W.2d 114, 117 (1978); *see generally* Grant S. Nelson & Dale A. Whitman, *Real Estate Finance Law* § 10.1 (2d ed. 1985).

The standard of appellate review in a case governed by equitable principles is "clear abuse of discretion." *See, e.g., Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 533 (Tex.App.—Tyler 1992, writ denied) (injunction); *Hues v. Warren Petroleum Co.,* 814 S.W.2d 526, 529 (Tex.App.—Houston [14th Dist.] 1991, writ denied) (injunction); *Isuani v. Manske–Sheffield Radiology Group,* 805 S.W.2d 602, 606–07 (Tex.App.—Beaumont 1991, writ denied) (injunction); *Reynolds–Penland Co. v. Hexter & Lobello,* 567 S.W.2d 237, 246 (Tex.Civ.App.—Dallas 1978, writ dism'd by agr.) (excusing failure to exercise option); *Mathews v.*

*First Citizens Bank,* 374 S.W.2d 794, 797 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.) (restoration).

A trial court abuses its discretion only when it acts in an unreasonable or arbitrary manner, or when it acts without reference to any guiding rules and principles. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991); *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). The reviewing court may not substitute its judgment for that of the trial court. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). In an equity action, the trial court's decision will not be reversed without a showing that an inequity resulted. *Kneip v. Unitedbank–Victoria,* 734 S.W.2d 130, 133 (Tex.App.—Corpus Christi 1987, no writ); *Davis v. Carothers,* 335 S.W.2d 631, 641 (Tex.Civ. App.—Waco 1960, writ dism'd by agr.).

## JURY VERDICT

In Texas, the parties to an action governed by equitable principles are entitled to a jury trial. *See* Tex. Const. art. I, § 15; *State v. Texas Pet Foods, Inc.,* 591 S.W.2d 800, 803 (Tex.1979); *San Jacinto Oil Co. v. Culberson,* 100 Tex. 462, 101 S.W. 197, 198 (1907). In such an action, the jury's verdict is not merely advisory. *Champlin Oil & Ref. Co. v. Chastain,* 403 S.W.2d 376, 390 (Tex.1965). On the contrary, the verdict in an equity action is binding as to the facts determined by the jury. *Texas Pet Foods,* 591 S.W.2d at 803; *Alamo Title Co. v. San Antonio Bar Ass'n,* 360 S.W.2d 814, 816 (Tex.Civ.App.—Waco 1962, writ ref'd n.r.e.).

In the present case, the following facts were established by the jury's verdict:

> Question No. 1: Med Center intended to base its loan to the joint venture *only* on Tract "C" (the shopping center tract), and *not* on Tract "A."

> Question No. 2: Fleetwood knew that Med Center intended to base its loan to the joint venture on Tract "C."

> Question No. 3: Med Center did *not* base its loan to the joint venture on the reasonable expectation that it would

obtain a secured position in Tract "A" that was superior to the lease.

Question No. 4A: At the time of Med Center's loan to the joint venture, Fleetwood did not know of any intention by Med Center to be substituted into Fleetwood's lien position.

Question No. 5: Fleetwood would suffer substantial harm as a result of the loan from Med Center if Med Center were given a security interest in Tract "A" that was superior to the lease.

Question No. 6: Med Center was negligent in attempting to achieve a priority lien position with respect to Tract "A."

Question No. 7: Fleetwood exercised reasonable diligence to avoid the potential of loss of a superior position in Tract "A."

The jury's findings are amply supported by evidence in the record. Indeed, Med Center does not actually contest the sufficiency of the evidence. In Med Center's brief to this Court, point of error three does include a stated challenge to the legal and factual sufficiency of the evidence to support the jury's findings. However, the relevant "arguments and authorities" section of the brief presents a "grouped" argument under multiple points of error, and nowhere in that section does Med Center attack the sufficiency of the evidence to support the jury's findings. Accordingly, any such challenge has been waived. *See La Sara Grain Co. v. First Nat'l Bank,* 673 S.W.2d 558, 568 (Tex.1984); *Peterson v. Dean Witter Reynolds, Inc.,* 805 S.W.2d 541, 552 (Tex.App.—Dallas 1991, no writ). The jury's findings are, therefore, binding on this Court. *Cf. McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986).

The jury's verdict here is extremely important. First, the jury found that Fleetwood would suffer "substantial harm" if Med Center were given a security interest in Tract "A" that was superior to the lease. As discussed above, prejudice to holders of intervening interests is a long-recognized exception to equitable subrogation. And as we explained in *Fleetwood I,* the very removal of the "protection" of owning the more senior lien should be a cognizable

prejudice to the junior lienholder, even before the junior lien is actually threatened by foreclosure of the senior lien. 786 S.W.2d at 555–56.

Next, the jury found that Med Center had been negligent, but that Fleetwood had exercised reasonable diligence. When the right to subrogation is wholly dependent on equitable principles, negligence on the part of one seeking subrogation is of some importance. *Providence Inst. for Sav. v. Sims,* 441 S.W.2d 516, 519 (Tex.1969).

Finally, and perhaps most significantly, the jury found that Med Center did not have a reasonable expectation that it would obtain a secured position in Tract "A" that was superior to the lease; indeed, the jury found that Med Center never intended to base its loan on Tract "A," but only on Tract "C." These findings are of special significance in this case because "[s]ubrogation of the lender is based on the general principle that one who advances money upon a *justifiable expectation of receiving security* is entitled to the security." Nelson & Whitman, *supra* at 714 (emphasis added). Since Med Center had no expectation at all—justifiable or otherwise—of receiving a superior lien on Tract "A," how can the trial court have abused its discretion in refusing to use its equity power to award such a lien? Moreover, the granting of subrogation to Med Center in these circumstances *would* defeat the expectations of Fleetwood, because he had crafted the transaction to have protection for his interest in the lease, he had been diligent in doing so, and he was led to believe that his superior lien was being completely extinguished.

For the trial court, this was probably a difficult case of balancing equities. Had I been the trial judge, exercising traditional powers of equity, I am not sure which way I would have ruled. For an appellate court, however, merely reviewing the trial court's decision under an abuse-of-discretion standard, the case is easier. Where binding determinations of fact have been made that Fleetwood would suffer harm, that Fleetwood exercised reasonable diligence, that Med Center was negligent, and

that Med Center never intended or expected to be secured by a superior lien on Tract "A" in the first place, the trial court's refusal to grant Med Center the equitable remedy of subrogation cannot, in my opinion, be considered arbitrary, unreasonable, or without reference to any *guiding rules and principles.* If it can be, then subrogation is no longer an equitable doctrine, but one governed by bright-line, as-a-matter-of-law principles.

I would affirm the trial court's judgment.