**BANK OF AMERICA, Appellant,**

v.

**Thomas BABU and Babu A. Geevarghese, Appellees.**

No. 05–09–00726–CV.

Court of Appeals of Texas, Dallas.

May 3, 2011.

Rehearing Overruled June 21, 2011.

Louis Frank Oliver, Oliver & Oliver, Austin, TX, for Appellant.

Scott Meyer, Chalker Flores, LLP, Byron Kevin Henry, Cowles & Thompson, PC, Dallas, TX, for Appellees.

Before Justices MARTIN RICHTER, LANG, and MYERS.

## OPINION

Opinion By Justice LANG.

Appellant, Bank of America ("Bank"), filed suit requesting a declaratory judgment that it was entitled to an equitable subrogation lien in the amount of $101,546.95 on improved real property in Dallas County (the "property"). Bank claims its rights are superior to the rights of appellees Thomas Babu ("Babu") and Babu A. Geevarghese ("Geevarghese") (collectively, "appellees"), who purchased the property at a foreclosure sale. Following a bench trial, the trial court signed a final judgment that "quieted" title to the property in appellees and provided that Bank take nothing.

Bank presents thirteen issues on appeal. In its first two issues, Bank contends the trial court erred by (1) not declaring Bank is the beneficiary of an equitable subrogation lien and (2) quieting title in appellees free and clear of such equitable subrogation lien. Bank's remaining issues challenge the trial court's findings of fact and conclusions of law relating to those two issues.

We decide in favor of Bank on its first, second, eighth, ninth, tenth, eleventh, twelfth, and thirteenth issues. We need not reach Bank's remaining issues. The trial court's judgment is reversed and we render judgment declaring Bank is the beneficiary of an equitable lien on the property in the principal amount of $101,546.95 superior to the rights of appel-

lees in such property. Additionally, we remand this case to the trial court for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On October 15, 1997, Jacob A. George executed a "Warranty Deed With Vendor's Lien" conveying the property at issue to John K. John and Annamma K. John ("the Johns"). The Johns executed two instruments on that same date. Those documents included a promissory note executed by them in the amount of $650,000 and payable to George and a deed of trust that secured the note. The October 15, 1997 warranty deed and deed of trust were recorded in the real property records of Dallas County on October 20, 1997.

On December 31, 1998, George executed an "Assignment of Interest in Deed of Trust (And Real Estate Lien Note)" to First Western Federal Savings Bank ("First Western"). Under the terms of that assignment (the "first assignment"), George assigned to First Western "all of [his] right, title, and interest in and to" the October 15, 1997 deed of trust for a period lasting "until [First Western] has received certain payments." Specifically, First Western was to receive thirty-one of the $6,211.74 monthly payments to be made by the Johns "under said Deed of Trust," commencing with the payment due on January 15, 1999, and ending with the payment due on July 15, 2001. The assignment provided that when all such payments had been received, "all of [First Western's] right, title, and interest in said Deed of Trust shall thereupon terminate" and "[George] shall reassume all duties and obligations under the terms of said Deed of Trust the same as if the assignment had not occurred." Further, in the

event of nonpayment by the Johns, First Western had the right, subject to various provisions, to give notice of default to the Johns and proceed with foreclosure under the terms of the October 15, 1997 deed of trust. At the time that assignment was executed, the balance due on the note secured by the October 15, 1997 deed of trust was $622,531.77. That assignment was recorded in the real property records of Dallas County on January 7, 1999.

George executed a second "Assignment of Interest in Deed of Trust (And Real Estate Lien Note)" to First Western on October 13, 2003 (the "second assignment"). The terms of the second assignment were substantially identical to those of the first assignment, except that the second assignment provided that First Western was to receive thirty-six of the Johns's $6,211.74 monthly payments "under said Deed of Trust," commencing with the payment due on October 15, 2003, and ending with the payment due on September 15, 2006. At the time the second assignment was executed, the balance due under the Johns's note was $480,149.76. The second assignment was recorded in the real property records of Dallas County on October 16, 2003.

On March 16, 2004, George and his wife, Thadathil V. George, ("the Georges") executed a document entitled "Release of Lien" (the "release"). The release described the property and the October 15, 1997 deed of trust and vendor's lien securing payment of the $650,000 promissory note executed by the Johns. Further, the release stated, in part, "Holder of the note acknowledges its payment and releases the property from the lien." On that same date, the Johns conveyed the property to the Georges by way of a "Warranty Deed

With Vendor's Lien." In connection with that transaction, and also on March 16, 2004, the Georges executed a promissory note in the principal amount of $250,000 payable to the Johns and a deed of trust providing for a lien on the property securing the payment of the note. The release and the March 16, 2004 deed of trust were recorded in the real property records of Dallas County on March 17, 2004.

On May 3, 2005, George borrowed $277,796 from Bank. To secure that indebtedness, George executed a deed of trust providing for a lien on the property in favor of Bank. The deed of trust executed by George in favor of Bank stated "[t]he debt evidenced by the Note is in part or total payment of the purchase price of the Property; the debt is secured by both this Deed of Trust and by a vendor's lien on the Property, which is expressly retained in the deed of the Property to Grantor." On May 4, 2005, the title company that processed Bank's loan to George paid, on behalf of Bank, $101,546.95 to First Western.

In 2006, the Georges defaulted on the $250,000 promissory note they had executed in favor of the Johns, and the Johns initiated foreclosure proceedings pursuant to the March 16, 2004 deed of trust. At a September 5, 2006 foreclosure sale (the "foreclosure sale"), the property was sold to Babu and Geevarghese for $210,547.15.

Bank filed this suit on October 15, 2007.[1] In its first amended petition, the last-filed petition at the time of trial, Bank sought declaratory judgment that (1) the release recorded on March 17, 2004 was void and (2) Bank was entitled to an equitable lien on the property in the amount of $101,546.95 plus interest. Bank contended

1. Initially, Babu, Geevarghese, and the Johns were named as defendants. However, prior to trial, the Johns were non-suited by Bank.

that at the time the release was recorded, George was no longer the holder of the first lien on the property because such lien had been assigned to First Western on December 31, 1998. Further, Bank argued that because it had paid off the First Western lien in full on May 4, 2005, it was equitably subrogated to First Western's lien position, "which was first and improperly released by [George]."

Appellees filed general denial answers and counterclaims to quiet title to the property. Additionally, appellees asserted affirmative defenses that included, in relevant part: (1) appellees were good faith purchasers for value without notice of Bank's alleged lien at the time they purchased the property and (2) Bank cannot establish the requisite elements necessary to prove its equitable relief claim.

At trial, documents admitted into evidence included copies of the deeds of trust and assignments described above, the March 16, 2004 release of lien, and documents pertaining to the closing of Bank's loan to George. Following the trial court's ruling in favor of appellees and against Bank, Bank filed a timely motion for new trial, which was heard and denied by the trial court. Subsequently, the trial court made "Revised Findings of Fact and Conclusions of Law" that stated in relevant part as follows:

*Findings of Fact*

. . . .

19. At the time Defendants purchased the Subject Property at the September 5, 2006 foreclosure sale, no documents appeared of record in the Dallas County Real Property Records Office that would give Defendants actual or constructive notice of a lien on the Subject Property that was superior to the lien created by the March 16, 2004 Deed of Trust lien.

21. Defendants purchased the Subject Property at the September 5, 2006 foreclosure sale without any actual or constructive notice of the alleged superior lien claimed by Plaintiff in this lawsuit.

. . . .

23. Defendants are good faith purchasers of the Subject Property.

. . . .

*Conclusions of Law*

. . . .

2. Plaintiff failed to establish by a preponderance of the evidence each element of its claim of equitable subrogation.

3. Plaintiff failed to establish by a preponderance of the evidence that Defendants would be unjustly enriched if equitable subrogation is not allowed.

4. Plaintiff was negligent in failing to file any document(s) of record in the Dallas County Real Property Records Office to evidence its alleged lien on the Subject Property.

5. Defendants are good faith purchasers of the Subject Property holding legal title to the Subject Property, and as such Plaintiff is not entitled to an equitable lien on the Subject Property.

6. The balance of the equities in this matter in view of the totality of the circumstances weighs in favor of Defendants on Plaintiff's claim of equitable subrogation, thus Plaintiff's claim to an equitable lien on the Subject Property must be denied.

7. As legal title owners of the Subject Property free and clear of any and all lien(s) claimed by Plaintiff in this

matter, Defendants are entitled to have title to the Subject Property quieted in the names of Thomas Babu and Babu A. Geevarghese, free and clear of any and all liens or claims asserted by or on behalf of Bank of America and/or its alleged assignor First Western Federal Savings Bank.

To the extent the Court's findings of fact are construed by a reviewing court to be conclusions of law, and/or vice versa, the incorrect designation shall be disregarded and the specified finding and/or conclusion shall be deemed to have been correctly designated herein.

This appeal timely followed.

## II. BANK'S ISSUES

### A. *Standard of Review*

We review a trial court's conclusions of law de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). "The appellant may not challenge a trial court's conclusions of law for factual sufficiency; however, the reviewing court may review the trial court's legal conclusions drawn from the facts to determine their correctness." *Id.*

■ " 'The expediency, necessity, or propriety of equitable relief' is for the trial court, and its ruling is reviewed for an abuse of discretion." *Wagner & Brown, Ltd. v. Sheppard*, 282 S.W.3d 419, 428–29 (Tex.2008) (quoting *State v. Tex. Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979)). A trial court abuses its discretion when it acts arbitrarily or unreasonably without reference to any guiding rules and

principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

### B. *Analysis*

#### 1. Good Faith Purchasers

■ We begin by addressing Bank's eleventh issue, in which Bank asserts the trial court erred "in holding that the bona fide purchaser defense protected Babu and Geevarghese from [Bank's] equitable subrogation lien." According to Bank, "[b]ecause [a]ppellees Babu and Geevarghese had constructive notice of the unreleased lien rights of First Western Federal Savings Bank to which [Bank] succeeded, they were not protected by the bona fide purchaser defense as a matter of law."

##### a. Applicable Law

■ The Texas Supreme Court has stated

> Status as a bona fide purchaser is an affirmative defense to a title dispute. A bona fide purchaser is not subject to certain claims or defenses. To receive this special protection, one must acquire property in good faith, for value, and without notice of any third-party claim or interest. Notice may be constructive or actual. Actual notice rests on personal information or knowledge. Constructive notice is notice the law imputes to a person not having personal information or knowledge.

*Madison v. Gordon*, 39 S.W.3d 604, 606 (Tex.2001) (citations omitted); *see AMC Mortg. Servs., Inc. v. Watts*, 260 S.W.3d 582, 586 (Tex.App.-Dallas 2008, no pet.).[2]

---

**2.** *AMC Mortg. Servs.*, like the trial court in this case, uses the term "good faith purchaser," rather than "bona fide purchaser." *AMC Mortg. Servs.*, 260 S.W.3d at 586 ("To qualify as a good faith purchaser, the party must demonstrate that the purchase was made (1)

in good faith, (2) for valuable consideration, and (3) without actual or constructive knowledge of any outstanding claims of a third party."). Those two terms have the same meaning. *See Richards v. Suckle*, 871 S.W.2d 239, 242 (Tex.App.-Houston [14th Dist.] 1994,

"[W]hereas actual notice is usually a question of fact for the jury, constructive notice is a legal presumption not to be controverted." *Univ. State Bank v. Gifford–Hill Concrete Corp.*, 431 S.W.2d 561, 571 (Tex. Civ.App.-Fort Worth 1968, writ ref'd n.r.e.).

■ A party has constructive notice of instruments properly recorded in the proper county. TEX. PROP.CODE ANN. § 13.002 (West 2004); *AMC Mortg. Servs. Inc.*, 260 S.W.3d at 586. A party claiming title through principles of equity has the burden of proving that a subsequent purchaser was not a good faith purchaser. *AMC Mortg. Servs., Inc.*, 260 S.W.3d at 586.

### b. Application of Law to Facts

We construe Bank's eleventh issue to challenge the trial court's conclusion of law number five and findings of fact numbers nineteen, twenty-one, and twenty-three. *See City of Pasadena v. Gennedy*, 125 S.W.3d 687, 691 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (construing appellant's challenges, which did not specify to which findings of fact or conclusions of law they related, to attack pertinent findings and conclusions supporting complained-of aspects of judgment); *see also* TEX.R.APP. P. 38.1(f), 38.9; *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989) ("[I]t is our practice to construe liberally points of error in order to obtain a just, fair and equitable adjudication of the rights of the litigants."). Further, to the extent those three findings address constructive notice, we construe such findings as conclusions of law. *See Univ. State Bank*, 431 S.W.2d at 571 ("constructive notice is a legal presumption not to be controverted"); *see also Jensen v. Covington*, 234 S.W.3d 198, 205 n. 4 (Tex.App.-Waco 2007, pet. denied) (construing finding of fact as conclusion of law).

Appellees assert (1) Bank "gratuitously construes only selected portions" of the second assignment without acknowledging other provisions that "negate any potential duty" of appellees to inquire beyond the face of the assignments, (2) the evidence at trial established that the parties to the foreclosure sale believed such sale involved a first lien position, (3) the title search report introduced at trial "further reiterates" that the foreclosure sale appeared to be a sale of a first lien, and (4) Bank introduced no evidence or testimony at trial to support its argument that appellees had a duty to inquire beyond the recorded documents.

The record reflects the second assignment was filed in the Dallas County real property records on October 16, 2003, well before the September 5, 2006 foreclosure sale. Under the terms of that assignment, George assigned to First Western "all of [his] right, title, and interest in and to" the October 15, 1997 deed of trust for a period lasting "until [First Western] has received certain payments." Attached to the second assignment was an "Exhibit 'A'" that listed the due dates of the payments assigned therein, with the first being "10/15/2003" and the last being "9/15/2006." Thus, under the express terms of the second assignment, First Western was assigned "all of [George's] right, title, and interest in and to" the October 15, 1997 deed of trust from October 15, 2003, until September 15, 2006. The March 16, 2004 release was executed only by the Georges. The release did not identify or mention the second assignment. Accordingly, as a matter of record, the lien rights assigned to First Western under the terms of the second assignment were unreleased on the date of the foreclosure sale.

no pet.). We use the term "good faith purchaser" in our analysis in this opinion.

Appellees assert this case is "strikingly similar" to *AMC Mortg. Servs.*, in which this Court rejected a "constructive notice" argument asserted against a party who purchased at a foreclosure sale. However, we cannot agree. In *AMC Mortg. Servs.*, Lillie Gonzalez purchased a property in 1996 with two loans, one from Long Beach Mortgage, secured by a deed of trust, and one from the seller, Richard Smith, secured by a deed of trust stating it was subordinate to the Long Beach deed of trust. *AMC Mortg. Servs., Inc.*, 260 S.W.3d at 584. Smith subsequently sold and assigned his note and deed of trust to HSH Corporation. *Id.* In 1999, Gonzalez refinanced the Long Beach loan with a loan from "Ameriquest," one of the three appellants,[3] and Ameriquest filed a release of lien applicable to the Long Beach deed of trust. *Id.* In September 2000, Gonzalez obtained a home equity extension of credit from Ameriquest. *Id.* In November 2000, Ameriquest filed a release of lien that specifically identified and released the 1999 deed of trust and stated, "Further, Holder hereby releases the property from all other liens held by Holder." *Id.* In October 2003, Gonzalez obtained another home equity extension of credit from Ameriquest. *Id.* Ameriquest executed and filed of record a release of the 2000 deed of trust in November 2003. *Id.*

Gonzalez defaulted on the note to Smith that had been assigned to HSH Corporation. *Id.* At a May 2005 foreclosure sale, HSH Corporation sold the property to the Wattses. *Id.* To pay HSH Corporation for the property, the Wattses borrowed from another mortgage company, which loan was secured by a deed of trust against the property. *Id.*

In December 2005, Ameriquest foreclosed on the 2003 home equity loan. *Id.* Ameriquest filed suit to evict the Wattses, and the Wattses sued to quiet title. *Id.* at 585. The trial court granted summary judgment in favor of the Wattses on the ground that the Smith deed of trust was superior to Ameriquest's 2003 deed of trust. *Id.*

On appeal, the Wattses argued that the doctrine of equitable subrogation asserted by appellants was inapplicable because the Wattses were good faith purchasers. *Id.* at 586. In response, appellants contended the Wattses had "actual or constructive knowledge" of appellants' claim of superior title. *Id.* This Court stated, in part, that the summary judgment evidence showed the Wattses purchased the property with "full knowledge and constructive notice" that the 1999 lien had been released, and nothing showed the 1996 Smith deed of trust did not become the superior lien. *Id.* at 587. Further, this Court stated, "Nothing in the summary judgment evidence shows [the Wattses] were on notice of appellants' claim that equitable subrogation made the 2003 deed of trust a renewal of the 1999 deed of trust." *Id.* This Court concluded that the Wattses, as good faith purchasers, prevailed over appellants. *Id.*

In this case, no release of the lien rights assigned to First Western under the terms of the second assignment was on record at the time of the foreclosure sale. Therefore, unlike in *AMC Mortg. Servs.*, the property at issue was not purchased with "full knowledge and constructive notice" that the prior lien at issue had been released. We conclude appellees had constructive notice of the unreleased lien rights assigned to First Western. *See*

---

**3.** The appellants in the case included AMC Mortgage Services, Inc., Ameriquest Mortgage Co., and Ameriquest Mortgage Securities, Inc. *Id.* The relationship of those appellants is not described in the opinion. *See id.*

TEX. PROP.CODE ANN. § 13.002; *AMC Mortg. Servs. Inc.*, 260 S.W.3d at 586. Therefore, appellees cannot claim the status of good faith purchasers. *See Madison*, 39 S.W.3d at 606; *AMC Mortg. Servs. Inc.*, 260 S.W.3d at 586. We decide in favor of Bank on its eleventh issue.

**2. Equitable Subrogation Requirements**

■ Next, we address together Bank's eighth, ninth, tenth, and twelfth issues, which pertain to whether Bank properly established its claim for equitable subrogation.[4] We construe those issues to challenge the trial court's conclusions of law numbers two, three, four, and six. *See* TEX.R.APP. P. 38.1(f), 38.9; *City of Pasadena*, 125 S.W.3d at 691; *Sterner*, 767 S.W.2d at 690.

**a. Applicable Law**

■ Equitable subrogation "is a legal fiction" whereby "an obligation, extinguished by a payment made by a third person, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another." *First Nat'l Bank of Houston v. Ackerman*, 70 Tex. 315, 8 S.W. 45, 47 (1888); *accord Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 337 (Tex.1980). It essentially allows a subsequent lienholder to take the lien-priority status of a prior lienholder. *First Nat'l Bank of Houston*, 8 S.W. at 46–47; *Murray v. Cadle Co.*, 257 S.W.3d 291, 299 (Tex.App.-Dallas 2008,

pet. denied). The general purpose of equitable subrogation is to prevent unjust enrichment of the debtor. *First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 415 (Tex.1993); *Murray*, 257 S.W.3d at 299.

Texas courts are particularly hospitable to the doctrine of equitable subrogation. *Murray*, 257 S.W.3d at 299; *Interfirst Bank Dallas, N.A. v. U.S. Fid. & Guar. Co.*, 774 S.W.2d 391, 397 (Tex.App.-Dallas 1989, writ denied). "Texas courts have also given the doctrine 'a liberal application ... broad enough to include every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity and good conscience should have been discharged by the latter.'" *Murray*, 257 S.W.3d at 299 (quoting *Forney v. Jorrie*, 511 S.W.2d 379, 386 (Tex.Civ.App.-San Antonio 1974, writ ref'd n.r.e.)); *see Frymire Eng'g Co., Inc. v. Jomar Int'l, Ltd.*, 259 S.W.3d 140, 144 (Tex.2008); *Mid–Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774 (Tex.2007); *Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 807 (Tex.1978) (op. on reh'g).

■ There are two key elements to equitable subrogation: (1) the person whose debt was paid was primarily liable on the debt, and (2) the claimant paid the debt involuntarily. *Murray*, 257 S.W.3d at 299. The burden is on the party claiming equitable subrogation to establish he is

---

4. Those issues read

   8. Did the trial court err in holding that Bank of America failed to establish its claim for equitable subrogation?

   9. Did the trial court err in holding that Bank of America was required to prove that Babu and Geevarghese were unjustly enriched to prevail on a claim for equitable subrogation?

   10. Did the trial court err in holding that Bank of America was negligent? Alterna-

tively, did the trial court err in holding that the alleged negligence was a bar to Bank of America's equitable subrogation claim?

   ....

   12. Did the trial court err in holding that the balance of the equities required denial of Bank of America's equitable subrogation lien?

entitled to it. *Id.* at 300; *Monk v. Dallas Brake & Clutch Serv. Co., Inc.*, 697 S.W.2d 780, 782 (Tex.App.-Dallas 1985, writ ref'd n.r.e.).

"Additionally, each case turns on its own facts when the issue is one of purely equitable subrogation." *Murray*, 257 S.W.3d at 300 (citing *Providence Inst. for Sav. v. Sims*, 441 S.W.2d 516, 519–20 (Tex.1969)). The trial court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation. *Id.* Factors a court may consider in conducting this balancing test are the negligence of the party claiming subrogation, whether that party had notice of the intervening lien, and whether the intervening lienholder will be prejudiced if equitable subrogation is allowed. *Id.; see also Fleetwood v. Med Ctr. Bank*, 786 S.W.2d 550, 555 n. 2 (Tex.App.-Austin 1990, writ denied) ("*Fleetwood I*"). The determination of whether subrogation prejudices intervening interests is made "as of the time of the transaction supporting subrogation." *Med Ctr. Bank v. Fleetwood*, 854 S.W.2d 278, 286 (Tex.App.-Austin 1993, writ denied) ("*Fleetwood II*"). "The consequences of subsequent transactions or events . . . are not relevant to this inquiry." *Id.* A junior lienholder does not suffer prejudice merely because it is not elevated in priority. *Id.*

### b. Application of Law to Facts

Bank contends that at trial, it established its entitlement to equitable subrogation as a matter of law. According to Bank, the trial court "misapplied the doctrine of equitable subrogation" by focusing on (1) unjust enrichment of appellees, rather than the Johns, and (2) circumstances subsequent to the transaction supporting subrogation. Further, Bank asserts the trial court erred by determining Bank's equitable subrogation claim was barred by negligence, because there was no legal basis to impose a duty to file an instrument giving notice of such claim.

Appellees argue (1) the trial court properly concluded Bank failed to establish the essential element of "unjust enrichment," (2) case law supports rejecting the application of equitable subrogation against non-debtors; and (3) the trial court did not err in concluding the "balancing of the equities" test weighed in favor of appellees on the facts of this case. We address appellees' arguments in turn.

First, with respect to "unjust enrichment," appellees contend Bank failed to establish that "[a]ppellees would be unjustly enriched if equitable subrogation is allowed to [a]ppellant," which appellees argue was a required element of Bank's claim. Additionally, appellees assert that even if the trial court should have focused on the unjust enrichment element as between Bank and the Johns, Bank "still failed to produce any evidence of how the Johns would be unjustly enriched if [Bank] is not allowed to impose a first lien on *Appellees[']* property." (emphasis original).

The general purpose of equitable subrogation is "to prevent the unjust enrichment of the *debtor* who owed the debt that is paid." *First Nat'l Bank of Kerrville*, 856 S.W.2d at 415 (emphasis original). The trial court stated in its conclusion of law number three that Bank failed to establish by a preponderance of the evidence that *appellees* would be unjustly enriched if equitable subrogation was not allowed. Appellees argue the trial court's focus on unjust enrichment as to them, rather than the debtor, was correct because "[i]f indeed the purpose of equitable subrogation is to prevent unjust enrichment, . . . the analysis of the unjust enrichment aspect must focus solely on the parties whose interests are affected by whether or not the court grants a party's claim of equita-

ble subrogation." In support of that position, appellees cite *Fleetwood I*, in which the court stated that where the proper requirements have been met, equitable subrogation should apply "unless the superior or equal equities of others would be prejudiced thereby." *Fleetwood I*, 786 S.W.2d at 554. However, *Fleetwood I* does not specifically address "the analysis of the unjust enrichment aspect" of equitable subrogation or purport to expand that analysis beyond the debtor. Appellees cite no other authority for their position, and we have found none. We decline to expand the scope of the unjust enrichment analysis beyond "the *debtor* who owed the debt that is paid." *First Nat'l Bank of Kerrville*, 856 S.W.2d at 415; *see Murray*, 257 S.W.3d at 299. Therefore, we conclude the trial court erred by considering unjust enrichment as to appellees.

■ Further, the requirement of unjust enrichment to the debtor in the equitable subrogation context is met by showing the debt owed by the debtor was paid involuntarily by the party seeking equitable subrogation. *See Smart*, 597 S.W.2d at 337 ("Subrogation to the creditor's rights is available ... only when the debtor was enriched unjustly; thus, the payor who confers a benefit as a "mere volunteer" is not entitled to this remedy.") (citing *Oury v. Saunders*, 77 Tex. 278, 13 S.W. 1030, 1031 (1890) (where party seeking equitable subrogation paid debt under circumstances that "would lead to the belief" such payment would protect that party's interest, such party was not a "volunteer" and obligation to subrogate such party to lien at issue should be implied)); *accord Harrison v. First Nat'l Bank*, 238 S.W. 209, 210–11 (Tex. Comm'n App.1922, judgm't adopted). Appellees did not challenge the involuntariness of Bank's payment in the trial court, nor do they raise such a challenge on appeal.

Second, we address appellees's argument that case law supports rejecting the application of equitable subrogation against non-debtors. In a post-submission letter brief filed in this Court in response to questions by this Court during oral submission, appellees assert the Texas Supreme Court, when describing the equitable subrogation doctrine, has stated creditors may be subrogated as "against the debtor." According to appellees, "[t]he limiting phrase must be given meaning and not treated as mere surplusage." However, the two cases cited by appellees in support of that argument involved creditors asserting equitable subrogation against debtors. *See LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007); *First Nat'l Bank of Kerrville*, 856 S.W.2d at 415. Neither case addresses assertion of equitable subrogation against non-debtors. We cannot agree with appellees that those cases support rejecting the application of equitable subrogation against non-debtors. Additionally, appellees argue "there is at least one case that expressly rejects the application of equitable subrogation to a non-debtor." In support of that assertion, appellees cite *Casstevens v. Smith*, 269 S.W.3d 222, 227–28 (Tex.App.-Texarkana 2008, pet. denied). However, unlike the case at issue, *Casstevens* did not involve a debt paid by the party asserting equitable subrogation. Rather, the party asserting equitable subrogation in *Casstevens* made payments to the debtor pursuant to a separate obligation between those two, and the debtor then chose to use some of that money to pay the bank loan at issue. *Id.* at 226–27. We cannot agree *Casstevens* is applicable to the facts before us.

■ Third, we address the trial court's "balancing of the equities." The trial court stated in its conclusion of law number six that "[t]he balance of the equities

in this matter in view of the totality of the circumstances weighs in favor of Defendants on Plaintiff's claim of equitable subrogation." However, "[t]he determination of whether subrogation prejudices intervening interests is made as of the time of the transaction supporting subrogation." *Fleetwood II*, 854 S.W.2d at 286. "The consequences of subsequent transactions or events ... are not relevant to this inquiry." *Id.* Thus, the foreclosure sale on September 5, 2006, and the interests of appellees resulting therefrom cannot be a consideration in the trial court's balancing analysis. Rather, the trial court should have considered only whether equitable subrogation would have prejudiced interests existing at the time Bank paid off the Johns's debt to First Western. Appellees do not argue, and the record does not show, that equitable subrogation would have prejudiced any interests existing at that time. *See id.*

Additionally, the trial court stated in conclusion of law number four that Bank was "negligent in failing to file any document(s) of record in the Dallas County Real Property Records Office to evidence its alleged lien" on the property. However, we agree with Bank that the trial court erred in making that conclusion. The threshold inquiry with regard to negligence is whether a legal duty existed. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990). The existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question. *Id.* (citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307,

312 (Tex.1983)). Appellees cite no authority, and we have found none, establishing or indicating a legal duty of Bank to file a document of record evidencing its claimed lien. Accordingly, the lack of such a filing is no basis for negligence. *See id.; Edward D. Jones & Co. v. Fletcher*, 975 S.W.2d 539, 542 (Tex.1998). We conclude the trial court abused its discretion by concluding the balance of the equities in this case weighs in favor of appellees. *See Fleetwood II*, 854 S.W.2d at 286; *see also Downer*, 701 S.W.2d at 241–42.

We decide in favor of Bank on its eighth, ninth, tenth, and twelfth issues.

### 3. Bank's Entitlement to Equitable Subrogation

Finally, we address Bank's first, second, and thirteenth issues. In its second and thirteenth issues, Bank asserts the trial court erred by quieting title in Babu and Geevarghese free and clear of the claims of Bank. We construe those issues to challenge the trial court's conclusion of law number seven. In its first issue, Bank contends the trial court erred by "not declaring that [Bank] is the beneficiary of an equitable subrogation lien in the principal amount of $101,546.95 superior to the rights of Babu and Geevarghese in the property."

In light of our conclusions above, we decide in favor of Bank on its first, second, and thirteenth issues. We need not address Bank's third, fourth, fifth, sixth, or seventh issues.[5]

5. Those issues read as follows:

> 3. Did the trial court err in finding valid the Release of Lien dated March 16, 2004 executed by Mr. And Mrs. George, even though they had previously assigned all right, title, and interest in the Deed of Trust to First Western Federal Savings Bank? Alternatively, did the trial court

> err in finding that the Release of Lien validly released the lien rights previously assigned to First Western Federal Savings Bank?
> 4. Did the trial court err in finding that the Release of Lien executed by Mr. And Mrs. George appeared to release the October 15, 1997 Deed of Trust previously

## III. CONCLUSION

We conclude Bank established as a matter of law (1) appellees were not good faith purchasers and (2) its entitlement to equitable subrogation. We decide in favor of Bank on its first, second, eighth, ninth, tenth, eleventh, twelfth, and thirteenth issues. We need not reach Bank's remaining issues.

We (1) reverse the trial court's judgment, (2) render judgment declaring Bank is the beneficiary of an equitable subrogation lien in the principal amount of $101,546.95 superior to the rights of appellees in the property, and (3) remand this case to the trial court for further proceedings consistent with this opinion.

assigned of record to First Western Federal Savings Bank?

5. Did the trial court err in finding that the March 16, 2004 Deed of Trust appeared of record to be a first lien on the property?

6. Did the trial court err in finding that no documents of record in the Dallas County real property records gave constructive notice of Bank of America's equitable subrogation claim?

7. Did the trial court err in finding that Babu and Geevarghese did not have constructive notice of Bank of America's equitable subrogation claim?