

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00184-CV

DAN DEES                                                            APPELLANT

V.

SARAH MARIE DEES AND DAVID                                         APPELLEES
VERNON DEES

----------

### FROM THE 231ST DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Equitable subrogation cases normally turn on their own facts. *See First Nat'l Bank of Kerrville v. O'Dell*, 856 S.W.2d 410, 416 (Tex. 1993). This case is no different. After considering and balancing the facts and equities involved, the

---

[1]*See* Tex. R. App. P. 47.4.

trial court denied Appellant Dan Dees's claim for equitable subrogation. He now appeals. We will affirm.

## II. BACKGROUND

Appellee David Vernon Dees is Dan's brother. David married Appellee Sarah Marie Dees in 1993.

In June 2008, Dan loaned David and Sarah $15,000 because they were in "financial distress." David and Sarah never repaid the loan—it was supposed to be repaid in sixty equal monthly installments—but they agreed that they had an obligation to do so.

Several years later, in October 2010, David contacted Dan about obtaining another loan. At the time, Sarah was working as a nurse and David was unemployed but collecting unemployment benefits. Not wanting to see David and Sarah in "jeopardy," Dan loaned them $302,300. Dan made the loan with the understanding that he would be repaid—either on a monthly basis after David began working again or in full from the proceeds of the sale of the residence if David and Sarah decided to sell the residence.[2] Of the $302,300 loan, David and Sarah used approximately $201,000 to pay off their mortgage. They used the remainder of the money to remodel their bathroom; make repairs to the pool; pay off a credit card; pay ad valorem taxes; pay for a cruise; pay for Sarah's breast

---

[2]Sarah recalled that David had told her that he would repay Dan using the money that he was expecting to receive from a lawsuit against his former employer.

2

augmentation; and purchase a Tahoe, a Corvette, a Chevrolet Monza drag car, furniture, and jewelry. As with the first loan, David and Sarah did not repay the second loan, but they both agreed that they had an obligation to do so.

Authorities arrested David on August 30, 2011, for aggravated sexual assault against Sarah.[3] Sarah filed for divorce shortly thereafter. Several months into the divorce action, Dan intervened and sought a declaration that under the doctrine of equitable subrogation, he was entitled to a first lien on Appellees' residence in the amount that David and Sarah used to pay off the mortgage.[4] Dan pleaded that in the absence of such equitable relief, he "may well be subjected to a full loss of $317,300.00." After a final bench trial, the trial court denied Dan's claim for equitable subrogation but awarded him a judgment against David and Sarah in the amount of $317,300. The trial court also appointed a receiver to sell David's and Sarah's residence.

The trial court entered findings of fact, including the following:

13. On or about June 28, 2008, DAN DEES transferred to SARAH MARIE DEES and DAVID VERNON DEES the sum of $15,000, and that sum has not been repaid. On October 20, 2010, DAN DEES transferred to SARAH MARIE DEES and DAVID VERNON DE[E]S the sum of $302,300, and that sum has not been repaid.

---

[3]A jury later convicted David of sexual assault and sentenced him to four years' confinement.

[4]Dan also pleaded for a lien against the vehicles that David and Sarah purchased and the home improvements that they made.

3

14. No documents were executed by either SARAH MARIE DEES or DAVID VERNON DEES evidencing the transfer of $302,300 and the $15,000. No documents were executed evidencing a lien concerning the transfer of $302,300 and the $15,000.

. . . .

16. From the $302,300 transfer, the balance on the parties' marital residence was paid in full in the sum of $201,262.86. The payment was made from the account of DAVID VERNON DEES and SARAH MARIE DEES.

17. At the time of the transfer of the $302,300 on October 20, 2010, and at the time of the payoff of the mortgage, all payments on the mortgage were current and the residence was not in danger of a forced sale.

18. DAN DEES did not communicate with SARAH MARIE DEES regarding the transfer of the funds to SARAH MARIE DEES and DAVID VERNON DEES nor did he discuss with SARAH MARIE DEES the payoff of the mortgage on the marital residence.

19. SARAH MARIE DEES was told by DAVID VERNON DEES that the repayment to DAN DEES would be made from the proceeds of DAVID VERNON DEES' employment lawsuit that was pending at that time and remains pending as of the date of trial.

20. DAN DEES acted as a volunteer in his transfer of the $302,300 and $15,000 to SARAH MARIE DEES and DAVID VERNON DEES.

21. DAN DEES' transfer of $302,300 and $15,000 was not made for necessaries.

22. No action was taken by DAN DEES to collect any of the sums transferred to SARAH DEES and DAVID VERNON DEES until after the separation of SARAH MARIE DEES and DAVID VERNON DEES, after DAVID DEES was arrested (and later convicted) of sexual assault of SARAH MARIE DEES and after the divorce was filed.

4

. . . .

24. DAN DEES continued to transfer funds for the benefit of DAVID VERNON DEES after the divorce was filed for legal expenses incurred in connection with the divorce proceeding and for the criminal defense of the sexual assault charges for which he was later convicted. The legal fees paid by DAN DEES for the benefit of DAVID VERNON DEES are in excess of $150,000 as of the date of trial.

The trial court's tenth conclusion of law sets out the order in which the proceeds from the sale of the residence are to be disbursed, and the court's twelfth conclusion states that Dan's claim for equitable subrogation is denied.[5]

After filing his notice of this appeal, Dan filed an emergency motion to stay the receiver's sale of David's and Sarah's residence pending our resolution of this appeal, which we granted.

## III. EQUITABLE SUBROGATION

Dan argues in his first issue that the trial court reversibly erred by denying his claim for equitable subrogation. He contends that this case is controlled by our memorandum opinion in *Hulen v. Hamilton*, No. 02-06-00288-CV, 2008 WL 553812, at *3–6 (Tex. App.—Fort Worth Feb. 28, 2008, no pet.) (mem. op.); that the evidence is legally and factually insufficient to support the trial court's findings

---

[5]The proceeds from the receiver's sale of the residence are to be distributed in the following order: to pay receiver fees; to pay delinquent homeowner association fees; to pay any tax debt encumbering the property, including reimbursing Dan for sums that he had paid against the tax debt; and to be divided between David and Sarah's attorneys as trustees for David and Sarah.

5

of fact numbers 17, 18, 19, 20, and 21; and that the trial court erred in its conclusions of law numbers 10 and 12. Appellee responds that *Hulen* is factually distinguishable from this case and that Dan voluntarily loaned the money to David and Sarah, thus negating his claim for equitable subrogation.[6]

A trial court's findings of fact have the same force and dignity as a jury's answers to jury questions and are reviewable for legal and factual sufficiency of the evidence to support them by the same standards. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991); *see also MBM Fin. Corp. v. Woodlands Operating Co.*, 292 S.W.3d 660, 663 n.3 (Tex. 2009). We may sustain a legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998), *cert. denied*, 526 U.S. 1040 (1999); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex. L. Rev. 361, 362–63 (1960). When reviewing an assertion that the evidence is factually insufficient to support a finding, we set aside the finding only if, after

---

[6]On May 23, 2014, Dan filed a motion for leave to file a letter brief. We deny the motion because it directs the court to facts that are not part of the record and that were not before the trial court.

6

considering and weighing all of the evidence in the record pertinent to that finding, we determine that the credible evidence supporting the finding is so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986) (op. on reh'g); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965).

We may review conclusions of law to determine their correctness based upon the facts, but we will not reverse because of an erroneous conclusion if the trial court rendered the proper judgment. *City of Austin v. Whittington*, 384 S.W.3d 766, 779 n.10 (Tex. 2012) (citing *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002)); *H.E.B., L.L.C. v. Ardinger*, 369 S.W.3d 496, 513 (Tex. App.—Fort Worth 2012, no pet.).

Although equitable subrogation most often arises in the insurance context, it applies in every instance in which one person, not acting voluntarily, has paid a debt for which another was primarily liable and which in equity should have been paid by the latter. *Frymire Eng'g Co. ex rel. Liberty Mut. Ins. Co. v. Jomar Int'l Ltd.*, 259 S.W.3d 140, 142 (Tex. 2008). The doctrine allows a party who pays the debt of another to put on the released creditor's shoes and collect reimbursement. *Drilltec Techs., Inc. v. Remp*, 64 S.W.3d 212, 216 (Tex. App.—Houston [14th Dist.] 2001, no pet.). The general purpose of the doctrine, therefore, is to prevent the unjust enrichment of the debtor. *O'Dell*, 856 S.W.2d at 415. As the name indicates, however, subrogation is proper only if it is

7

equitable. *Id.* The trial court must balance the equities in view of the totality of the circumstances to determine whether a party is entitled to equitable subrogation. *Bank of Am. v. Babu*, 340 S.W.3d 917, 926 (Tex. App.—Dallas 2011, pet. denied).

Dan's equitable-subrogation claim is at odds with one basic requirement of the doctrine: a third-party payment. The supreme court has stated, "[T]his court has always made it clear that the payment had to be *for the benefit* of the *debtor*—i.e., an *obligor* on the debt—at the time of the 'subrogation' transaction, for the doctrine to apply." *O'Dell*, 856 S.W.2d at 415 (emphasis in original). While the emphasis in that statement was on the requirement that there be a debtor on whose behalf a payment is made, equally important is the other, un-italicized part of the sentence—that a *payment be made* for the debtor. Indeed, the supreme court long ago described equitable subrogation as a legal fiction whereby "an obligation, extinguished *by a payment made by a third person*, is treated as still subsisting for the benefit of this third person, so that by means of it one creditor is substituted to the rights, remedies, and securities of another." *First Nat'l Bank of Houston v. Ackerman*, 70 Tex. 315, 320, 8 S.W. 45, 47 (1888) (emphasis added).

Here, there is no evidence that Dan paid a debt for which David and Sarah were primarily liable. Instead, regarding the $302,300, the evidence is undisputed that Dan transferred the money to David and Sarah's account and that they spent the money on various things, including to pay the balance of their

8

mortgage. The transaction has all the hallmarks of a standard loan agreement—David initiated contact with Dan about obtaining the money, Dan advanced David and Sarah the money with the understanding that they would pay him back, and David and Sarah spent the money. Similar circumstances surround the first loan. The trial court awarded Dan a judgment against David and Sarah in the amount of $317,300. When "an adequate and complete remedy at law is provided, our courts, though clothed with equitable jurisdiction, will not grant equitable relief." *Rogers v. Daniel Oil & Royalty Co.*, 130 Tex. 386, 392, 110 S.W.2d 891, 894 (1937). Dan directs us to no caselaw, nor have we found any, reasoning that equitable subrogation, as opposed to a judgment at law for the amount of the money loaned, is the appropriate remedy under these circumstances.

Even if Dan's failure to pay a debt on behalf of David and Sarah did not bar his equitable-subrogation claim, the evidence supports the trial court's finding that Dan loaned the money as a volunteer. One who pays the debt of another as a mere stranger or volunteer is not entitled to equitable subrogation. *O'Dell*, 856 S.W.2d at 415. A payment is voluntary when the payor acts without any assignment or agreement for subrogation, without being under any legal obligation to make a payment, and without being compelled to do so for the preservation of any rights or property. *Frymire Eng'g Co.*, 259 S.W.3d at 145.

Here, Dan had no legal obligation to loan David and Sarah any money, nor was he compelled to do so to preserve some right or property. The evidence instead demonstrates a course of conduct whereby Dan voluntarily provided

9

financial assistance to his family members—in addition to the two loans the subject of this suit, Dan paid approximately $75,000 in attorneys' fees that David incurred in his sexual assault case and approximately $80,000 in attorneys' fees that David incurred in his divorce action. Dan argues that he is entitled to equitable subrogation under the theory of unjust enrichment, but the requirement of unjust enrichment to the debtor is met by showing that the debt was paid involuntarily by the party seeking equitable subrogation. *Babu*, 340 S.W.3d at 927. Dan did not meet that burden.

Dan directs us to our *Hulen* opinion and argues that the volunteer exception to his equitable-subrogation claim does not apply because the loan was for necessaries. In *Hulen*, Hamilton paid the balance of Donna's mortgage because she was unemployed, ill from diabetes, and unable to make her mortgage payments. 2008 WL 553812, at *1, *6. We held that Hamilton was entitled to equitable subrogation even if he had voluntarily paid Donna's debt because the payment was for necessaries (housing) and that a payment for necessaries, although voluntary, can preclude the application of the volunteer exception. *Id.* at *5–6.

*Hulen* is inapposite for several reasons. First, unlike the loan that Dan advanced in this case, Hamilton paid the balance of Donna's mortgage directly to the bank. *Id.* at *1. Further, although Dan testified that he loaned David and Sarah the money so that they would not lose their home, there is evidence that the trial court could have relied upon to conclude that David and Sarah were not

10

in jeopardy of losing their home. Specifically, Dan acknowledged at trial that there was no evidence that David and Sarah were behind in their mortgage payments, and the evidence showed that their September and October 2010 payments were automatically debited from their checking account without incident. David and Sarah had approximately $9,000 in their checking account and $15,000 in their savings account for the reporting period ending on October 5, 2010, and they had approximately $7,700 in their checking account and $9,000 in their savings account just before Dan transferred the $302,300. Sarah was gainfully employed as a nurse, David was receiving unemployment income, and Sarah had a 401(k) with a balance of approximately $50,000 when Dan transferred the second loan. Sarah testified that she did not know if they were in financial trouble in late 2010.

Moreover, although David and Sarah used part of the loaned money to pay the balance of their mortgage, they also spent a sizeable amount of the loan on things that are not necessaries—Sarah had her breasts augmented, David bought a Corvette and a drag car, they purchased furniture and jewelry, and they went on a cruise. David and Sarah had work performed on their pool and bathroom, but Sarah testified that neither the pool nor the bathroom was malfunctioning. She also said that they owned a Jeep and a Honda at the time of the second loan. Contrary to Dan's arguments, all of this evidence easily renders *Hulen* distinguishable from this case.

The trial court carefully considered the unique facts of this case and concluded that the circumstances did not favor equitable relief. We have reviewed the entire record. We hold that as to Dan's equitable subrogation claim, the evidence is legally and factually sufficient to support the trial court's findings of fact and that the trial court did not err in making its conclusions of law. We overrule his first issue.

## IV. ATTORNEY'S FEES

In his second issue, Dan argues that the trial court erred by failing to award him attorney's fees under chapter 37 or 38 of the civil practice and remedies code or section 27.01 of the business and commerce code.

The Uniform Declaratory Judgments Act allows a trial court to award reasonable and necessary attorney's fees as are equitable and just. Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2008). The decision to award attorney's fees is a matter within the trial court's discretion, and we will not reverse the trial court's decision absent a showing that the trial court abused its discretion. *Oake v. Collin Cnty.*, 692 S.W.2d 454, 455 (Tex. 1985). Having determined that equity did not favor Dan on his claim for equitable subrogation, the trial court could have reasonably concluded that it would not have been equitable and just to award Dan attorney's fees under section 37.009.

To recover attorney's fees under chapter 38, a party must (1) prevail on a cause of action for which attorney's fees are recoverable and (2) recover damages. *MBM Fin. Corp.*, 292 S.W.3d at 666; *see* Tex. Civ. Prac. & Rem.

12

Code Ann. § 38.001 (West 2008). Regarding the first requirement, a prevailing party has been defined as the party "who successfully prosecutes the action or successfully defends against it, *prevailing on the main issue*, even though not to the extent of its original contention." *Head v. U.S. Inspect DFW, Inc.*, 159 S.W.3d 731, 749 (Tex. App.—Fort Worth 2005, no pet.) (emphasis added). Here, from the outset of this intervention action, through trial, and now on appeal, the main issue alleged, litigated, and argued by Dan has been his claim for equitable subrogation—a claim that he did not successfully prosecute at trial or on appeal. Consequently, Dan is not entitled to an award of attorney's fees under chapter 38.[7]

Section 27.01(e) of the business and commerce code permits recovery of reasonable and necessary attorney's fees in cases involving fraud in real estate or stock transactions. Tex. Bus. & Comm. Code Ann. § 27.01 (West 2009). Dan is not entitled to fees under this section because he did not prevail on his section 27.01 claim. We overrule Dan's second issue.

---

[7]We note that Dan did recover a judgment against David and Sarah on the loan agreement, but that claim—which David and Sarah did not even contest at trial—was absolutely by no means the primary issue involved in this litigation. *See Head*, 159 S.W.3d at 749.

## V. CONCLUSION

Having overruled Dan's two issues, we affirm the trial court's judgment. We lift the July 26, 2013 order staying the sale of David and Sarah's residence, the property located at 1100 Wildlife Lane, Crowley, Texas 76036.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  GARDNER, MEIER, and GABRIEL, JJ.

DELIVERED:  June 5, 2014